UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERESE MEAGHER,

|  | Plaintiff, |
|---|---|

-against-

STATE UNIVERSITY CONSTRUCTION FUND,
ROBERT HAELEN, in his official and individual
capacity, and JO ANNE DI STEFANO, in her
official and individual capacity,

Defendants.

**DEFENDANTS'
MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

1:17-cv-903 (GTS/CFH)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
The Capitol
Albany, New York  12224-0341

By:   Brian W. Matula, Esq.
      Assistant Attorney General, of Counsel
      Telephone: (518) 776-2599
      Fax: (518) 915-7738 (Not for service of papers.)
      Email: Brian.Matula@ag.ny.gov

TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF CLAIMS ........................................................................................2

STANDARD OF REVIEW .........................................................................................3

ARGUMENT ...........................................................................................................4

I.      PLAINTIFF'S GENDER DISCRIMINATION CLAIMS SHOULD BE
DISMISSED. .......................................................................................4

II.     PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED. ...............9

III.    PLAINTIFF'S EQUAL PROTECTION CLAIMS SHOULD BE
DISMISSED. .....................................................................................11

     A.  The Plaintiff's Equal Protection claims should be dismissed for failing to
allege any comparators. ........................................................................12

     B.  Plaintiff's equal protection claims based upon gender and retaliation
should be dismissed. ............................................................................14

     C.  Plaintiff's equal protection claim based upon familial status should be
dismissed. ............................................................................................15

IV.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM
SHOULD BE DISMISSED. ..................................................................16

V.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIMS
SHOULD BE DISMISSED. ..................................................................19

VI.   PLAINTIFF'S NEW YORK STATE HUMAN RIGHTS LAW CLAIMS
SHOULD BE DISMISSED ...................................................................20

     A.  Plaintiff's NYSHRL claims for gender discrimination and retaliation
should be dismissed. ............................................................................20

     B.  Plaintiff's NYSHRL claim for familial status discrimination should be
dismissed. ............................................................................................21

     C.  The Court should decline to exercise its supplemental jurisdiction
over any remaining state law claims. .....................................................23

CONCLUSION.........................................................................................................24

PRELIMINARY STATEMENT

The Plaintiff has failed in her 135-paragraph Complaint to allege the most basic factual information needed in a complaint of workplace discrimination. The Plaintiff has failed to identify a single statement or action by the Defendants that was motivated by a discriminatory animus based on gender or familial status. Plaintiff has failed to offer any allegations concerning any comparator to whom her treatment could be compared. She also has failed to allege that she engaged in any speech that is protected under the First Amendment. Remarkably, rather than alleging in support of her substantive due process claim that the Defendants engaged in behavior that is conscience shocking in a constitutional sense, the Plaintiff claims that the Defendants' alleged failure to give her an additional benefit in the form of a "credit" when she worked more than 37.5 hours in a week constituted brutal and abusive conditions.

The Plaintiff alleges that she complained about her workload and the number of hours she worked. She alleges that she complained about having to work weekends and nights and of the time that she was required to work that could have been spent with her family. She alleges that she complained about having to work a full-time schedule, about her new supervisor's unexpected cancellation of meetings, about her supervisor's demands and about following email protocols. She alleges that she complained about her supervisor's criticism of her work performance, her work product and her interaction with staff and clients. But not once does the Plaintiff allege that she ever complained to the Defendants or to anyone else during her employment that she was being discriminated against because she was a woman or because she was a mother.

The Plaintiff's claims of an unpleasant working environment stemmed not from the Plaintiff's gender or status as a mother, but because of her disagreements with her new supervisor, Deputy Counsel of the State University Construction Fund (the "Fund") Jo Anne Di Stefano. Defendant Di Stefano, a woman and mother herself, was the Plaintiff's boss and repeatedly raised

1

issue with the Plaintiff's performance, work product and schedule.  These were not issues driven by the Plaintiff's sex or status as a mother, but by the Plaintiff's work product that the Plaintiff alleges Ms. Di Stefano found "personally and professionally offended by," the Plaintiff's performance in meetings that Defendant Di Stefano participated in, and in response to repeated complaints about the Plaintiff being unable to manage her workload.  Despite these issues, the Plaintiff remained in her position with absolutely no adverse employment action taken against her, and the Defendants (despite no legal requirements whatsoever to do so) continued to attempt to accommodate her requests.

Despite the minimal pleading requirements needed for the types of claims alleged in her Complaint, the Plaintiff has wholly failed to meet her burden of stating a claim as to any of them. For the foregoing reasons, the Plaintiff's Complaint should be dismissed in its entirety.

## STATEMENT OF CLAIMS

The Plaintiff has asserted claims against the Fund for gender discrimination and retaliation under Title VII (Dkt. 1, *Complaint*, ¶¶111-116) and claims against Defendants Robert Haelen and Jo Anne Di Stefano for alleged violations of the Plaintiff's rights under the Equal Protection Clause (gender and family status), First Amendment (retaliation), Fourteenth Amendment (substantive due process), as well as claims under New York State's Human Rights Law (gender and familial status and retaliation)(Dkt. 1, *Complaint*, ¶¶117-135).

<u>STANDARD OF REVIEW</u>

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *Carroll v. New York*, No. 1:14-CV-00479 (MAD/ATB), 2014 U.S. Dist. LEXIS 160426 at *5-6 (N.D.N.Y. 2014)(*citing Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)). The Plaintiff was required in her pleading to plead facts that "state a claim to relief that is plausible on its face." *Moore v. City of N.Y.*, No. 15-CV-6600, 2017 U.S. Dist. LEXIS 379 at *30-31 (S.D.N.Y. 2017)(*citing Ashcroft Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Plaintiff must plead sufficient "factual content" to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The Plaintiff, through her factual allegations must "sufficiently 'nudge [her] claims across the line from conceivable to plausible.'" *Id.*; *Twombly*, 550 U.S. at 570; *Carroll*, 2014 U.S. Dist. LEXIS 160426 at *5-6. "Naked assertions devoid of further factual enhancement" or facts asserted that may merely be consistent with the defendant's liability "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Moore*, 2017 U.S. Dist. LEXIS 379 at *30-31; *Twombly*, 550 U.S. at 570; *Carroll*, 2014 U.S. Dist. LEXIS 160426 at *5-6.

While a plaintiff's "well-pleaded facts" must be presumed to be true, "[t]his presumption of truth does not extend to legal conclusions. *Carroll*, 2014 U.S. Dist. LEXIS 160426 at *5-6 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Moore*, 2017 U.S. Dist. LEXIS 379 at *30-31 (*quoting Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000); *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

<u>ARGUMENT</u>

## I.   PLAINTIFF'S GENDER DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

In the First Cause of Action of her Complaint, the Plaintiff suggests that because she was a woman, she was subjected to a hostile work environment in violation of Title VII. *See* Dkt. 1, *Complaint*, ¶¶111-113. A plaintiff asserting a claim pursuant to Title VII must demonstrate that the employer discriminated against the plaintiff because of the plaintiff's race, color, religion, sex, or national origin. 42 U.S.C. §§2000e-2(a)(1). The *"sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of"* the employee's protected characteristic. *See Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 169086 at *18-20 (S.D.N.Y. 2013); *Leibovitz v. New York City Transit Authority*, 252 F.3d 179, 189 (2d Cir. 2001).

Claims under Title VII based on a theory of a hostile work environment are intended to protect individuals from abuse and severe trauma in the workplace. *See Seale v. Madison County*, 2015 U.S. Dist. LEXIS 24519 at *35 (N.D.N.Y. 2015). To state a cause of action for a hostile work environment discrimination claim under Title VII, the Plaintiff must allege facts which show that "the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Torres v. Pisano*, 116 F.3d 625, 630-1 (2d Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *see also Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001). The plaintiff must show that she "was targeted for abusive treatment because of a protected status." *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 03-CV-6233, 2005 U.S. Dist. LEXIS 12582 at *65-66 (E.D.N.Y. 2005); *Oncale,* 523 U.S. 75, 80 (1998); *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001).

When a claim is based upon "gender-animus" rather than sexual desire, it must be proven

by:

> "harass[ment] in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of [persons of the opposite sex] in the workplace," *Raniola*, 243 F.3d at 621 (internal quotation omitted), or by offering "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory[,]" *Alfano*, 294 F.3d at 378.

*Zamot v. Monroe Cty. Dep't of Human Servs.*, 739 F. Supp. 2d 311, 321-22 (W.D.N.Y.

2010)(internal citations omitted).  As the Second Circuit cautioned in *Alfano v. Costello*, however:

> Everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Alfano v. Costello,* 294 F.3d 365, 377-78 (2d Cir. 2002); *see also Wall v. Town of Niskayuna*, 2009

WL 290454, at * 10 (N.D.N.Y. Feb. 5, 2009) (noting that a plaintiff's "feelings and perceptions of

being discriminated against are not evidence of discrimination.") (citation omitted).  While facially

neutral incidents may be included in the "totality of circumstances" that is analyzed in a hostile

work environment case, such events can only be considered if there is a circumstantial basis for

inferring that these incidents were actually motivated by discrimination. *Alfano,* 294 F.3d at 378.

As noted by the Supreme Court in *Faragher v. City of Boca Raton*, it is important to distinguish

between harassment and *discriminatory* harassment in order to "ensure that Title VII does not

become a general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct.

2275 (1998).

To survive a motion to dismiss a plaintiff must plead facts sufficient to give "plausible

support" to the plaintiff's initial burden of proof under the burden shifting test set forth by the

Supreme Court in *McDonnell Douglas*.[1] *Cherry v. N.Y.C. Hous. Auth.*, No. 15-CV-6949 (MKB), 2017 U.S. Dist. LEXIS 161830 at *14-16 (E.D.N.Y. Sep. 29, 2017). Where there is no direct evidence of discrimination, a plaintiff must allege facts that "plausibly support a finding that [s]he suffered an adverse employment action" and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.; see Vega v. Hempstead Union Free School District*, 801 F.3d 72 at 87 (2d Cir. 2015).

Where the plaintiff fails to "plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic, the pleading should be dismissed. *See Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 169086 at *18-20 (S.D.N.Y. 2013); *see also Brown v. Henderson*, 257 F.3d at 252 ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs *because of* an employee's sex, or other protected characteristic.").

The Plaintiff's allegations of a "hostile work environment" allege that the environment was created and perpetuated primarily by another woman, Defendant Jo Anne Di Stefano. *See generally*, Dkt. 1, *Complaint*. However, there are no allegations that either of the individual Defendants, or anyone else, *ever* made or permitted anyone to make any derogatory comments whatsoever about women or that Defendants ever treated women differently than men, let alone that they engaged in such conduct so pervasively that it gave rise to a hostile work environment. Rather, what is clear from the Plaintiff's own allegations is that the alleged hostility asserted by

---

[1] In order to establish a prima facie case of employment discrimination, a plaintiff must demonstrate (1) membership in a protected group; (2) that he or she was qualified for the position at issue; (3) that he or she suffered an adverse employment action; and (4) that the adverse employment action occurred "under circumstances giving rise to an inference of discrimination." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (alterations, quotations and citation omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the Plaintiff has nothing to do with an intent to discriminate against her because she is a woman, and everything to do with issues involving her schedule, time off, compensation, work performance and workload. *Id.*

For instance, the Plaintiff alleges that Defendant Di Stefano "confronted the Plaintiff in a hostile manner" and asked the Plaintiff if she wanted to continue to work at the Fund because Defendant Di Stefano was "personally and professionally offended" by the worklist the Plaintiff provided to her. *See generally,* Dkt. 1, *Complaint,* ¶49. The Plaintiff claims she was "confused and humiliated" based on her discussions with Defendant Di Stefano and the manner by which Defendant Di Stefano addressed her about her work. *Id.*, ¶¶49-53. The Plaintiff claims that the hostility was attributable to Defendant Di Stefano being upset about having to reschedule meetings on days the Plaintiff had previously scheduled to be off (*id.,* ¶65), and Defendant Di Stefano allegedly saying she felt "dissed" because the Plaintiff emailed papers to her instead of printing her a copy (*id.* ¶68).

The comments the Plaintiff claims were "derogatory" do not pertain to Plaintiff's gender, but were alleged to be about "the workflow information that the Plaintiff had provided." *See* Dkt. 1, *Complaint*, ¶54. The "criticism" and "lack of guidance" the Plaintiff attributes to Defendant Di Stefano pertained to the "kind of workflow report" she wanted. *Id.*, ¶55. The "comments the Plaintiff claims were "demeaning" involved an alleged statement by Defendants Di Stefano and Haelen about the personal sacrifices that each of them made in balancing home life and work life. *Id.*, ¶56, ¶69, ¶75. The "demeaning" behavior alleged by the Plaintiff pertained to the Plaintiff's work hours (*id.*, ¶62), the Plaintiff's allegation that Defendant Di Stefano suggested that nights and weekends might be involved with her work (*id.*), that the Plaintiff's modified schedule was

temporary (*id.*, ¶62) and about the Plaintiff having "an emotional response" when discussing work hours (*id.*, ¶¶62-63, ¶75).

The "attack" alleged by the Plaintiff in her complaint relates to an alleged "attack" by Defendant Di Stefano about the Plaintiff's work performance during a work meeting (*id.*, ¶61), about the amount of time the Plaintiff had spent in a meeting (*id.*) and about the amount of time she was spending on work assignments (*id.*).

The "humiliation" complained of by the Plaintiff involved Defendant Di Stefano allegedly emailing staff about Plaintiff's time off (*id.*, ¶65), about Defendant Haelen describing his own sacrifice of time with his children for work (*id.*, ¶75), the alleged characterization of Plaintiff's emotional response and crying during a meeting as "immature" and "unprofessional" (*id.*) and the alleged statement to the Plaintiff that she had a problem with balancing her parental obligations with work for "a very long time" (*id.*).

Despite this litany of allegations, the Plaintiff has failed to allege anywhere in the Complaint that Defendants made a single remark about her gender or that they treated male employees differently than her. Even where the Plaintiff alleges in her Complaint "upon information and belief" that Defendant Di Stefano treated other people in a different manner (*see id.*, ¶66, ¶71), she fails to identify the gender of any of these other people or that this alleged differential and more favorable treatment was based on their gender (*see id.*).

Nothing in any of these allegations comes close to alleging facts sufficient to plead the existence of a "hostile work environment" and utterly fails to allege anything that would allow an inference to be drawn that the Plaintiff was a target because she was a woman. Therefore, the Plaintiff has failed to meet her burden of properly pleading a gender based discrimination claim under Title VII. *See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 03-CV-6233, 2005 U.S.

Dist. LEXIS 12582 at *65-66 (E.D.N.Y. 2005); *Oncale,* 523 U.S. at 80; *Brown v. Henderson,* 257 F.3d at 252; *see Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-04729(SJF-WDW), 2013 U.S. Dist. LEXIS 107565, at *15-19 (E.D.N.Y. 2013)(" if a plaintiff fails to allege: (1) that he or she was subject to any specific gender-based adverse employment action by a defendant; (2) any facts from which a gender-based motivation for a defendant's action might be inferred; or (3) that any employee of the opposite gender was given preferential treatment when compared to plaintiff, the complaint is insufficient to state a gender discrimination claim under Title VII."). As a result, the First Cause of Action of the Plaintiff's Complaint should be dismissed.

## II. PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED.

In the Second Cause of Action of her Complaint, the Plaintiff states in conclusory fashion that she has been retaliated against for "engaging in protected activity" in violation of Title VII. *See* Dkt. 1, *Complaint,* ¶115. A protected activity under Title VII includes protests or opposition to discrimination that is barred by Title VII. *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014).

In pleading her cause of action, the Plaintiff was required to provide factual allegations from which it may "plausibly be inferred" that the complaints the Plaintiff made (and upon which she is basing her claim for retaliation) involved conduct prohibited by Title VII, and that the complaints were made in such a manner so that the employer was "put on notice" that she believed she was being discriminated against on the basis of gender. *Grant*, 2013 U.S. Dist. LEXIS 107565 at *25-28; *Brummell v. Webster Central School Dist.*, No. 06-CV-6437, 2009 U.S. Dist. LEXIS 7644 (W.D.N.Y. 2009). Thus, the Plaintiff was required to have set forth facts showing both that

she complained of gender discrimination and that she was retaliated as a result of her complaints of gender discrimination. *Grant*, 2013 U.S. Dist. LEXIS 107565 at *25-28.

While the Plaintiff's Complaint asserts instances of opposition to the way that Plaintiff claims she was being treated at work, these instances are not "protected activities" that can serve as the basis for her retaliation claims because none of them have anything to do with complaints that the Plaintiff was being harassed, humiliated, demeaned or subjected to a "hostile work environment" *because she was a woman*. The Plaintiff claims that she met with Defendant Haelen to inform him of her interactions with Defendant Di Stefano and of Defendant Di Stefano "bullying" her. *See* Dkt. 1, *Complaint*, ¶¶74-77. However, the Plaintiff does not – and cannot -- allege anywhere in her Complaint that she told Defendant Haelen that she believed that this alleged "bullying" and hostility was motivated by any supposed discriminatory animus against her because she was a woman. In fact, the Plaintiff has failed to allege that anything of a gender nature whatsoever was discussed in her meeting with Defendant Haelen. *See* Dkt. 1, *Complaint*, ¶¶74-77.

The Plaintiff also alleged in her Complaint that she "made a verbal complaint" to Mary Jo Lais, Director of Human Resources, referencing the "hostile conduct" and "the Fund's Anti-Bullying Policy." *Id.*, ¶78. Once again, there is absolutely no allegation anywhere in the Plaintiff's Complaint that the Plaintiff attributed the alleged hostility and "bullying" that she claimed to be experiencing to gender discrimination. *Id.* The Plaintiff also alleges, in an apparent effort to support her retaliation claim that Defendants failed to timely respond to and address her complaints. *Id.*, ¶99. However, since the Plaintiff's alleged complaints were not based on any claim of gender discrimination, Defendants' alleged response to the complaints is completely irrelevant to a determination of this matter.

10

Since the Plaintiff's Complaint lacks any factual allegations from which it could be plausibly inferred that her alleged complaints to Defendants involved complaints of gender discrimination or other conduct prohibited by Title VII, the Second Cause of Action of her Complaint must be dismissed. *See Grant*, 2013 U.S. Dist. LEXIS 107565 at *25-28 ("Thus, there are no factual allegations in the complaint from which it may plausibly be inferred either that plaintiff himself possessed a good-faith belief that he was complaining [ ] of conduct prohibited by Title VII or that defendants could have understood his complaints [ ] in that way.").

## III.   PLAINTIFF'S EQUAL PROTECTION CLAIMS SHOULD BE DISMISSED.

In the Third Cause of Action of her Complaint, the Plaintiff attempts to alleged equal protection violations against the individual Defendants on the basis of both gender and familial status. *See* Dkt. 1, *Complaint*, ¶119.

An equal protection claim generally may be asserted as either a "selective enforcement claim" or a "class of one" claim. *33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 306 (N.D.N.Y. 2012). While the Plaintiff failed in her Complaint to allege the theory which she intended to pursue in advancing her claims, the only theory available in the public employment context is the theory of selective enforcement.[2] *Engquist v. Oregon Dept. of Agriculture*, 553 U.S.

---

[2]    The Supreme Court in *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008), held that the class-of-one theory of Equal Protection does not apply in the public employment context. In reaching its decision, the Court stated: "The Court is guided, as in the past, by the common sense realization that government offices could not function if every employment decision became a constitutional matter.  If class-of-one claims were recognized in the employment context, any personnel action in which a wronged employee can conjure up a claim of differential treatment would suddenly become the basis of a federal constitutional claim.  The Equal Protection Clause does not require this displacement of managerial discretion by judicial supervision." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008).

591 (2008); *see Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 592 (S.D.N.Y. 2016)("[T]he Supreme Court has flatly held 'that the class-of-one theory of equal protection does not apply in the public employment context.'").

A selective enforcement claim requires a plaintiff to demonstrate that differing treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Geagan v. City Univ. of N.Y.*, 2011 U.S. Dist. LEXIS 89018, at \*49-50 (S.D.N.Y. July 14, 2011).  A plaintiff is required to "establish and identify similarly situated individuals or comparators" to whom the plaintiff can be compared for purposes of the equal protection claim, and allege facts sufficient to establish that the defendant treated the plaintiff differently than those comparators. *33 Seminary LLC*, 869 F. Supp. 2d at 306 (*citing Kamholtz v. Yates County*, 350 F. App'x 589 (2d Cir. 2009)); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011); *Sharpe v. City of N.Y.*, 2013 U.S. Dist. LEXIS 75094 at \*12-14 (E.D.N.Y. 2013). In reviewing a motion to dismiss a selective enforcement equal protection claim, the Court must determine whether the plaintiff alleged facts inferring that she was treated differently than comparators who could plausibly be determined by a jury to be "similarly situated." *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 698.

### A. The Plaintiff's Equal Protection claims should be dismissed for failing to allege any comparators.

The Plaintiff has failed in her Complaint to identify any similarly situated individuals, either under her familial status claim or her gender claim, to whom her experiences can be compared for the purposes of her equal protection claim. *See generally* Dkt. 1, *Complaint*. As a result, the Plaintiff has completely failed to meet her burden of providing factual allegations such

that one could infer that she was similarly situated to (and treated differently from) anyone. *See*

*Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 698.

The only two allegations as to her treatment being different from any other person are two

generalized statements that have been asserted "upon information and belief." *See* Dkt. 1,

*Complaint*, ¶¶66, 71.  The Plaintiff alleges:

> 66. Upon information and belief, by contrast, Di Stefano's responses
> to other staff requests for time off were prompt and without
> protest or castigation.

*   *   *

> 71. Later that day, Plaintiff asked Di Stefano whether she could
> work from home in the evening after her daughters went to bed,
> as she was the only parent home that night. Di Stefano responded
> that Plaintiff could work at home, but that she could not use the
> time to replace time that she had been out of the office that day
> unless she did her work in the office. This was contrary to the
> practice permitted by the prior Fund Counsel and, upon
> information and belief, as afforded to other Fund employees.

*Id.*, ¶66, ¶71.  Both of these paragraphs fail to provide any information whatsoever about the

alleged comparators such that a determination could be made as to whether they were similarly

situated to the Plaintiff.  *See id.*  The allegations of comparators are limited to asserting that they

are "staff" and "other Fund employees," but fail in the most basic of ways to describe them –

whether they were men or women, whether they had a different family status than that of the

Plaintiff and whether these individuals held positions at the Fund that were remotely similar to the

Plaintiff's.  *See id.*  The Plaintiff was required to allege sufficient facts such that it would be

"plausible that a jury could ultimately determine that the comparators are similarly situated." *See*

*Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 698.  The Plaintiff has wholly failed to meet her

pleading burden with respect to her equal protection claim.  *Id.*

13

**B. Plaintiff's equal protection claims based upon gender and retaliation should be dismissed.**

The Plaintiff has asserted both an equal protection claim and a Title VII claim based upon her status as a woman. *See* Dkt. 1, *Complaint*, ¶119. Her equal protection claim should be considered under the same framework as set forth above for her Title VII claim.[3] Court have been clear that discrimination claims asserted under both Title VII and the Equal Protection Clause are analyzed under the same standard and stand or fall together. *See Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 323 (E.D.N.Y. 2014)(*citing Cortes v. City of New York*, 700 F. Supp. 2d 474, 487 (S.D.N.Y. 2010) ("Employment discrimination claims under Section 1983 that seek to vindicate a plaintiff's Fourteenth Amendment right to equal protection under the laws are measured against the same standards as are Plaintiff's Title VII hostile work environment and sex and race discrimination claims.")); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. N.Y. 2006); *United States v. City of New York*, 683 F. Supp. 2d 225, 257 (E.D.N.Y. 2010)(where a Title VII claim is paired with an equal protection claim, "the two must stand or fall together."); *Grant,* 2013 U.S. Dist. LEXIS 107565 at *32-35; *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004); *Mills v. Southern Connecticut State University*, 2013 WL 2157955 at * 3 (2d Cir. 2013).

For the reasons set forth above, the Plaintiff's claims in her Third Cause of Action asserted under the Equal Protection Clause on the basis of gender and retaliation should be dismissed. *See infra* Point I and II.

---

[3] For purposes of this motion only, it is assumed that the Plaintiff properly pleaded that the individual defendants were "acting under color of law" as contemplated under 42 U.S.C. §1983.

### C.  Plaintiff's familial status claim should be dismissed.

The Plaintiff's equal protection claim based upon her status as having children should also be dismissed. *See* Dkt. 1, *Complaint*, ¶119.  First, since the Plaintiff is unable to pursue a "class-of-one" theory (*see Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008)), she was required to allege in her Complaint that she belonged to a protected class entitled to the protections of the Equal Protection Clause.   The Equal Protection Clause provides protection against discrimination aimed at members of a protected class, such as race, religion or national origin.  *See Thomas v. City of Mount Vernon*, 215 F. Supp. 2d 329, 336 (S.D.N.Y. 2002); *see Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999).  The Plaintiff's status as being a parent or having children is not a "protected class" under federal law.  Therefore, her equal protection claim based on her familial status must be dismissed on this basis

Second, as with her gender discrimination claim, the Plaintiff has failed to identify a single individual who did not have children and who received more favorable treatment from the Defendants.  Remarkably, the Plaintiff has alleged that both of the individual defendants named in this action have children and as such were members of the Plaintiff's same claimed class.  *See* Dkt. 1, *Complaint*, ¶56, ¶69, ¶75.

There is nothing in the Complaint to suggest that the Plaintiff was treated differently *because of her having children*.  As such, the Plaintiff's equal protection claim based on familial status should be dismissed.

## IV.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM SHOULD BE DISMISSED.

In the Fourth Cause of Action of her Complaint, the Plaintiff attempts to assert a First Amendment retaliation claim against the Defendants for their alleged response to the speech of the Plaintiff. *See* Dkt. 1, *Complaint*, ¶123. The Plaintiff's speech at issue concerns her reporting of several issues to the Fund's Director of Human Resources and to Defendant Haelen. *Id.* This speech, as alleged, is entirely personal to the Plaintiff and, as such, is not speech entitled to First Amendment protection.

Whether speech is protected by the First Amendment is a question of law to be determined by the Court. *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). The threshold question in determining whether a public employee's speech is entitled to First Amendment protection is "[whether the speech] addresses a matter of 'public concern.'" *Knowlton v. Greenwood Independent School District*, 957 F.2d 1172, 1177 (5th Cir. 1992); *see also Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 492 (E.D.N.Y. 2011); *see Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006); *Connick* v. *Myers*, 461 U.S. 138 (1983). Speech is "on a matter of public concern" if it pertains to a "matter of political, social, or other concern to the community.'" *Adams v. New York State Educ. Dep't*, 2010 U.S. Dist. LEXIS 15635, *70 (S.D.N.Y. Feb. 23, 2010)(internal citations omitted). "[I]f the speech does not address a matter of public concern, a court will not scrutinize the reasons motivating a discharge that was allegedly in retaliation for that speech." *Knowlton*, 957 F.2d at 1177.

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v.*

*Myers*, 461 U.S. 138, 140 (1983). The court cannot compromise the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick*, 461 U.S. at 143, 147. In this regard, the Supreme Court has held that "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146. As a result, "a government employer's dismissal of the worker that may not be fair [but that] violates no fixed tenure or applicable statute or regulation is not subject to judicial review, even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Connick*, 461 U.S. at 146, 147.

In determining whether the alleged speech involved a personal matter or one of public concern, the courts have looked to the individual to whom the speech was directed together with the nature of the communication. *Adams*, 2010 U.S. Dist. LEXIS 15635 at \*81-82 (*citing Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178 (E.D.N.Y. 2009)(Plaintiff's complaints having been made to her supervisors was a significant factor weighing in favor of finding that plaintiff acted pursuant to official responsibilities rather than as a citizen.); *Felton v. Katonah Lewisboro Sch. Dist.*, 2009 U.S. Dist. LEXIS 64660, 2009 WL 2223853 at \*5 (Addressing one's speech to "direct supervisors" weighs in favor of finding that the employee spoke pursuant to official job responsibilities rather than as a teacher.); *Caraccilo v. Vill, of Seneca Falls*, 582 F. Supp. 2d 390, 410 (W.D.N.Y. 2008).

In *Adams*, the Court considered memoranda complaining of "blatant discriminatory treatment" which were submitted by the plaintiff to her employer. The Court found that grievances about how she was treated personally "d[o] not amount to speech as [a] 'citizen for First

Amendment purposes.'" *Adams*, 2010 U.S. Dist. LEXIS 15635 at *82-83 (*citing Loris v. Moore*, 344 Fed. Appx. 710 (2d Cir. Sept. 3, 2009)); *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) ("Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'")).

Here, the Plaintiff's First Amendment claim does not allege that she engaged in any speech on a matter of public concern. Rather, the Plaintiff claims that her speech was directed to her supervisors and to the Fund's Director of Human Resources about conduct affecting her personally. *See* Dkt. 1, *Complaint*, ¶¶74-77(met with Defendant Haelen to inform him of her interactions with Defendant Di Stefano and about Defendant Di Stefano "bullying" her); ¶78 (complained to Mary Jo Lais, Director of Human Resources, referencing the "hostile conduct" toward her and conduct directed toward her in violation of "the Fund's Anti-Bullying Policy"), ¶99 (complained about the speed with which the Defendants were handling her complaints of bullying). All of this "speech," directed to her supervisors and to human resources personnel concerns the Plaintiff's private employment issues – not matters of public concern warranting First Amendment protection. *See Adams*, 2010 U.S. Dist. LEXIS 15635 at *82-83 (*citing Loris v. Moore*, 344 Fed. Appx. 710 (2d Cir. Sept. 3, 2009)).

The allegations in the Plaintiff's Complaint fail to establish a plausible inference that Plaintiff engaged in protected speech. Since nothing in the Complaint can be reasonably read to constitute speech entitled to the protections of the First Amendment, the Plaintiff's Fourth Cause of Action must be dismissed.

## V.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIMS SHOULD BE DISMISSED.

In her Fifth Cause of Action of her Complaint, the Plaintiff claims that her rights to substantive due process were violated as a result of Defendants' alleged failure to "credit" her for time under a 1999 Resolution. *See* Dkt. 1, *Complaint*, ¶¶127-129. The Plaintiff has failed to allege any facts that would constitute a claim for violation of her substantive due process rights. The Eastern District of New York recently described the standard that must be met for a substantive due process violation:

> executive action only violates substantive due process rights when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." The difficulty of stating a claim for a substantive due process standard is illustrated by *Lewis*, which held that the parents of a motorcycle passenger killed in a high-speed chase by an allegedly deliberately indifferent police officer could not state a § 1983 claim under the doctrine. *See* 523 U.S. at 840, 855.

*DeMartino v. N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 368-69 (E.D.N.Y. 2016); *Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 434 (N.D.N.Y. 2005).

Substantive due process does not pertain to actions that may be "arbitrary or capricious" under state law, or those that may be incorrect or ill-advised, but only to conduct "that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Cohn*, 363 F. Supp. 2d at 434; *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (*quoting Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). Claims against a government employer only trigger application of the substantive due process where the employer "abuses some power unique to its role as a government entity." *Cherry v. N.Y.C. Hous. Auth.*, 2017 U.S. Dist.

LEXIS 161830 at *69-70 (E.D.N.Y. Sep. 29, 2017)(citing *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 353 (E.D.N.Y. 2013)).

Here, there has been nothing alleged that would indicate that the claims asserted by the Plaintiff involve employment actions taken that were unique to the Defendants' role as a governmental entity.  Further, there is nothing alleged that establishes circumstances that could be inferred to be so "outrageous and egregious" so as to rise to the level of being "truly brutal and offensive to human dignity." *DeMartino*, 167 F. Supp. 3d at 368-69; *Cohn*, 363 F. Supp. 2d at 434. Instead, the Plaintiff's claim involves an alleged failure to "credit" her with some form of benefit under a Resolution that was executed in 1999 – ten years before the Plaintiff even started working for Defendants.  These are not allegations sufficient to assert a substantive due process claim.

Therefore, the Plaintiff's Fifth Cause of Action of her Complaint should be dismissed in its entirety.

## VI.   PLAINTIFF'S NEW YORK STATE HUMAN RIGHTS LAW CLAIMS SHOULD BE DISMISSED

### A.   Plaintiff's NYSHRL claims for gender discrimination and retaliation should be dismissed.

Claims brought pursuant to Title VII and those brought pursuant to New York's Human Rights Law are analyzed under the same framework, and as such should stand or fall together. *See Rogers v. Bank of N.Y. Mellon*, 2016 U.S. Dist. LEXIS 107780, at *29 (S.D.N.Y. 2016); *Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, 305 n.3 (2004); *Thomson v. Odyssey House*, 2015 U.S. Dist. LEXIS 125887 at *43 (E.D.N.Y. 2015).   Therefore, the Plaintiff's Sixth and Seventh Causes of Action of her Complaint which attempt to allege claims for both gender discrimination and retaliation under

New York State's Human Rights Law should be dismissed for the same reasons identified in the above discussion concerning the dismissal of her Title VII claims. *See infra* Point I and II.

### B. Plaintiff's NYSHRL claim for familial status discrimination should be dismissed.

On January 19, 2016, "familial status" was added as a protected category under New York's Human Rights Law. *Toombs v. N.Y.C. Hous. Auth.*, No. 16-CV-3352-LTS, 2017 U.S. Dist. LEXIS 45544, at *20-21 (S.D.N.Y. Mar. 27, 2017). New York defines "familial status," to mean: "(a) any person who is pregnant or has a child or is in the process of securing legal custody of any individual who has not attained the age of eighteen years, or (b) one or more individuals (who have not attained the age of eighteen years) being domiciled with: (1) a parent or another person having legal custody of such individual or individuals, or (2) the designee of such parent." *See* N.Y. Exec. Law § 292; § 296.

The amended law provides that employers cannot make employment decisions based on the employee's familial status. *See* N.Y. Exec. Law § 292; § 296. The amended law, however, also added a specific provision to make it clear that while protection was now to be afforded on the basis of "familial status," the amendments were not intended to create a new right to "reasonable accommodation" with the addition of familial status protection. *See* Exhibit A, *Guidance on Familial Status Discrimination for Employers in New York State*; *see* Exec. Law §296.3(c). While the law prohibits the employer from discriminating against an employee on the basis of his or her familial status, the employer has no obligation to make accommodations so as to allow for the employee to care for his or her children. *See* Exec. Law §296.3(c).

The Plaintiff has failed in her Complaint to allege that she was treated differently *because of her familial status*. As with her gender claims discussed above, the Plaintiff has failed in asserting her familial status claims to identify any instance of treatment wherein she was treated

differently than an employee who did not have children, or any statement or action that could reasonably be inferred as targeting the Plaintiff *because of her familial status.*

Rather, the Plaintiff's Complaint is replete with allegations suggesting that the Defendants should be liable because of their refusal to make changes to the Plaintiff's schedule so as to accommodate her with regard to the care of her children. *See* Dkt. 1, *Complaint*, ¶2 (desire to spend more time with her family); ¶29 (strain being placed on her parenting obligations); ¶30 (work affecting parenting obligations); ¶34 (desire to return to reduced work schedule; ¶37 (concerns about work interfering with parenting obligations); ¶38 (seeking reduced workload); ¶42 (requesting time off to care for her daughters); ¶43 (requesting time off each week to care for her daughters); ¶45 (request for time off two days per week to care for children); ¶71 (requesting ability to work from home to care for daughters); and ¶72 (attributing damages to Defendants' alleged denial of request for accommodations to fulfill parenting obligations). As is evident from her Complaint, the Plaintiff is seeking recovery under a theory of alleged refusal to accommodate her because of her desire to spend more time with her family. This theory is not recognized under New York's recently enacted statute. *See* Exhibit A, *Guidance on Familial Status Discrimination for Employers in New York State*; *see* Exec. Law §296.3(c).

Finally, "familial status" was not a protected category until January 19, 2016, so adverse actions that are alleged to have occurred prior to that date cannot serve as the basis for an action under New York law under this category. *Toombs*, 2017 U.S. Dist. LEXIS 45544 at *20-21. The Plaintiff alleged that the denial of "compensatory hours" pursuant to the "1999 Resolution" occurred on December 7, 2015 (Dkt. 1, *Complaint*, ¶40); her being removed as Secretary to the Board of Trustees occurred August 7, 2015 (*id.* ¶32); requirement to have Defendant Di Stefano approve modifications to schedule occurred in approximately July or August 2015 (*id.* ¶35); failure

to address workload concerns occurred in August 2015 (*id.* ¶38); direction to not record time above full time week occurred on December 7, 2015 (*id.* ¶40-41); request for list of work the Plaintiff was performing occurred on January 7, 2016 (*id.* ¶45); and that Defendant's increasing hostility and demeaning behavior toward Plaintiff immediately began after she took two hours off on January 12, 2016 (*id.* ¶47-48). All of the "adverse actions" that pre-date New York's addition of "familial status" as a protected category on January 19, 2016, cannot serve as the basis of any claim by Plaintiff. *See Toombs*, 2017 U.S. Dist. LEXIS 45544 at *20-21 (claim based on familial status in violation of the NYSHRL dismissed since adverse action took place prior to January 19, 2016).

The Plaintiff's state law claim of discrimination in the Sixth and Seventh Causes of Action of her Complaint on the alleged basis of familial status and retaliation in connection with alleged reports of familial status discrimination should be dismissed.

### C. **The Court should decline to exercise its supplemental jurisdiction over any remaining state law claims.**

The Defendants respectfully request that the Court dismiss the Plaintiff's Complaint in its entirety. In the event that the Plaintiff's federal claims are dismissed but the Court permits any of the Plaintiff's state law claims to continue, this Court should not exercise its discretionary jurisdiction over the remaining state law claims and should instead dismiss those claims as well. *See Sadallah v. City of Utica*, 383 F.3d 34, 39-40 (2d Cir. 2004); *Butler v. N.Y. State Dep't of Law*, 998 F. Supp. 336, 346 (S.D.N.Y. 1998); *see Rogers*, 2016 U.S. Dist. LEXIS 107780 at *49.

<u>CONCLUSION</u>

For the above stated reasons, this Court should dismiss the Plaintiff's Complaint in its

entirety.

Dated: October 27, 2017
      Albany, New York

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
The Capitol
Albany, New York  12224-0341

By:   *s/Brian W. Matula*

Brian W. Matula, Esq.
Assistant Attorney General, of Counsel
Bar Roll No. 511717
Telephone: (518) 776-2599
Fax: (518) 915-7738 (Not for service of papers.)
Email: Brian.Matula@ag.ny.gov