UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERESE MEAGHER,

                              Plaintiff,

        -against-

STATE UNIVERSITY CONSTRUCTION FUND,
ROBERT HAELEN, in his official and individual
capacity, and JO ANNE DI STEFANO, in her
official and individual capacity,

                              Defendants.
_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

1:17-cv-903 (GTS/CFH)

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
The Capitol
Albany, New York 12224-0341

By:  Brian W. Matula, Esq.
     Assistant Attorney General, of Counsel
     Bar Roll No. 511717
     Telephone: (518) 776-2599
     Fax: (518) 915-7738 (Not for service of papers.)
     Email: Brian.Matula@ag.ny.gov

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................1

   I.    PLAINTIFF'S TITLE VII AND EQUAL PROTECTION CLAIMS SHOULD BE DISMISSED BECAUSE HER COMPLAINT FAILS TO ALLEGE SHE WAS SUBJECTED TO AN ALLEGED HOSTILE WORK ENVIRONMENT *BECAUSE OF HER SEX* ...........................................................................1

   II.   PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE HER PERSONAL ADVOCACY AND COMPLAINTS OF GENERALIZED BULLYING DO NOT CONSTITUTE PROTECTED SPEECH OR ACTIVITY .......................................................................7

       A. Plaintiff's personal advocacy for her own benefit to spend more time at home is not speech protected by the First Amendment. ....................7

       B. Plaintiff's complaint of generalized bullying does not constitute protected activity under Title VII because there was no basis to conclude that any alleged bullying related to her sex. ..........................9

CONCLUSION ..........................................................................................................10

# ARGUMENT

I. **PLAINTIFF'S TITLE VII AND EQUAL PROTECTION CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE SHE WAS SUBJECTED TO AN ALLEGED HOSTILE WORK ENVIRONMENT *BECAUSE OF HER SEX*.**

Plaintiff's opposition brief serves only to reinforce that her Complaint fails to allege that she was discriminated against by Defendants *because of her sex*. A plaintiff may establish a claim of discrimination under Title VII either "(1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." *Feingold v. New York*, 366 F.2d 138, 149 (2d Cir. 2004). On the first page of her brief, Plaintiff affirmatively states that her claims are limited to the alleged creation of a "hostile environment" by Defendants. *See* Plaintiff's Memorandum of Law ("Brief") at 1. However, because Plaintiff fails to plausibly allege that any such claimed hostility was motivated by Plaintiff's sex, her Complaint must be dismissed.

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–16. Therefore, it is "'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred ***because of her sex***." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)(emphasis added); *see also Kelly v. Howard I. Shapiro & Assoc. Consult. Eng.*, 716 F.3d 10, 15, 16 (2d Cir. 2013)(hostile work environment claim dismissed where plaintiff did not allege sexually explicit behavior or comments of a sex-specific nature); *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001)(plaintiff must allege she was subjected to a hostile work environment because of her sex); *Marshall v. N.Y. City Bd. of Elections*, 322 Fed.Appx. 17-19 (2d Cir. 2009)(unpublished opinion)(while plaintiff's allegations as to her supervisor's violent temper and behavior are troubling, Title VII "prohibits only harassment that is discriminatory").

A close review of the precise language used by Plaintiff in her Complaint demonstrates her complete failure to allege that any of Defendant's actions were motivated by an illicit sex-based animus. In her Complaint, Plaintiff exclusively describes herself as a "parent" – a term she uses repeatedly and which is not limited in any way to any specific sex. Not once in her entire 135-paragraph Complaint does Plaintiff ever describe herself as a "woman," a "mother, " a "female" or allege that Defendants ever used any of those words when speaking with her.[1] In fact, the statements Plaintiff attributes to Defendants both in her Complaint and in her brief about the balance between the demands of work and home always expressly refer to Plaintiff's *and* the individual Defendants' roles as "parents," and never as mothers, fathers, males, females, women or men. *See* Brief at 12 and Complaint, ¶ 75 ("Haelen reinforced the comments, stating that he had 'sacrificed so much *parenting* for work' and that Meagher 'had a problem with work and *parenting* balance for a very long time.'")(emphasis added); *id.* ("Haelen reinforced Di Stefano's *parenting* remarks with ones of his own")(emphasis added); *id.* (Haelen "attacked Meagher for 'get[ting] emotional in a meeting with Di Stefano about work-*parenting* issues'")(emphasis added).

Although Plaintiff would like to have the Court think otherwise, "parenthood" is not a protected status under Title VII. *See* 42 U.S.C. § 2000e–16. One's status as a parent certainly is not specific to any sex. As a result, Plaintiff's exclusive reliance on her status as a *parent* as the lynchpin of her claim highlights her failure to plausibly allege that Defendants' alleged interactions with her were motivated by a discriminatory animus *based on her sex*.

---

[1] In glaring contrast to the actual words of her Complaint, Plaintiff's brief, in an obvious attempt to create a claim where none was or could validly be alleged, is replete with references to Plaintiff as a woman (at least 6 times), a mother (at least 10 times), and a female.

In an attempt to try to avoid the ramifications of her Complaint's glaring deficiencies discussed above, Plaintiff engages in subterfuge by attempting to recast her claims as based on a "sex-plus" theory of discrimination. In doing so, Plaintiff goes so far as to argue that the allegations of her Complaint make "crystal clear that the hostile environment was motivated by Meagher's being a woman *with young children*."[2] *See* Brief at 1-2 (emphasis added), 5-17, 20. In making this argument, however, Plaintiff places all of her emphasis on the "plus" prong of the "sex-plus" theory – that she has young children – in order to obscure the fact that she completely ignores the crucial "sex" prong of the theory – that Defendants allegedly were hostile toward her *because she was a woman*. Plaintiff's failure to plead that Defendants' actions were motivated by a discriminatory sex-based animus requires the dismissal of her claims no matter what theory she attempts to rely on.

Plaintiff also necessarily acknowledges in her brief that the term "sex-plus" is simply a moniker for sex stereotyping, which, in the employment context, would involve making adverse employment decisions with respect to a person based upon preconceived negative stereotypes about that person's *sex*. The Supreme Court first articulated this theory in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971)(*per curiam*), a case involving a defendant employer's refusal to hire women with pre-school-aged children, although the employer readily hired men with pre-school-aged children. *Id.* at 543. The Supreme Court held that while this case was unlike other Title VII claims because not all women were affected by the employer's hiring policy, the policy nonetheless violated Title VII because a subgroup of women (women with children) were treated differently than the comparable subgroup of men (men with children) *on the basis of their sex. Id.*

---

[2] Notwithstanding Plaintiff's claim of absolute clarity regarding her theory of sex-plus discrimination, there is absolutely no reference to Plaintiff as a "woman with young children" or to the ages of her children in her Complaint, let alone any reference to the terms "sex-plus" or "gender-plus."

3

Over thirty years after the Supreme Court's decision in *Phillips*, the Second Circuit made clear in *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118-19 (2d Cir. 2004), that even where a sex stereotyping claim is advanced, the primary focus *must* still be upon whether the discrimination was *motivated by sex*. Specifically, the Court stated:

> The relevant issue is not whether a claim is characterized as "sex plus" or "gender plus," but rather, whether the plaintiff provides evidence of purposefully sex-discriminatory acts.

*Id. at 118-19*. Plaintiff's reliance in her brief on *Back* is surprising because the Court's decision in *Back* completely undermines her arguments.

Similarly, Plaintiff's reliance on the Courts' decisions in *Santiago-Ramos v. Centennial*, 217 F.3d 46 (1st Cir. 2000) and *Trezza v. Hartford, Inc.*, 1998 U.S. Dist. LEXIS 20206 (S.D.N.Y. 1998) also hurts her arguments and further demonstrates that she has failed to allege a claim that could plausibly fall under the sex stereotyping theory of discrimination. In *Santiago-Ramos*, the Court held that the plaintiff could proceed under a sex stereotyping theory because the plaintiff's supervisor had told her that he preferred "unmarried, childless women because they would give 150% to the job"; that he did not like women with children working at the company; and that, with regard to a female employee who stopped working late after having children, he stated, "this is what happens when we hire females in the child-bearing years."). *Id*. at 54. Likewise, in *Trezza v. Hartford, Inc.*, 1998 U.S. Dist. LEXIS 20206 (S.D.N.Y. 1998), the Court recognized that discrimination on the basis of one's *sex* was the key element of a sex stereotyping claim. The Court stated, "As defendants contend, the sex-plus theory of discrimination notwithstanding, a plaintiff must still prove disparate treatment between men and women in order to prevail on a Title VII discrimination claim." *Id*. Other cases also make this abundantly clear. *See, e.g., Coleman v. B–G Maintenance Mgmt., Inc.*, 108 F.3d 1199, 1203 (10th Cir. 1997) ("[A]lthough the protected class need not include *all* women, the plaintiff must still prove that the subclass of women was

4

unfavorably treated as compared to the corresponding subclass of men."); *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 235 (1989) (the female plaintiff, a senior manager at an accounting firm who was not made a partner, was regularly described by her supervisors as "macho" and "masculine" and was advised that she needed to become "more feminine" to improve her chances at partnership). These sex stereotyping cases unequivocally demonstrate that Plaintiff was required to alleged facts supporting an inference that she, as a woman with young children, was treated differently by Defendants because *she was a woman*. There simply is nothing in Plaintiff's Complaint that can be read to suggest any such claim.

In stark contrast to the cases that courts have countenanced under the sex stereotyping theory, Plaintiff's Complaint also makes clear that it was *Plaintiff* who interjected her role as a parent into employment discussions with her supervisors and requested changes to her work schedule to accommodate her parenting obligations and her desire to spend more time at home. *See* Complaint, ¶2 (Plaintiff expressed to Haelen the toll upon her and desire to spend more time with her daughters); ¶30 (Plaintiff requested Haelen's assistance "in addressing her excessive work hours and its effect on her parenting obligations"); ¶34 (Plaintiff wanted to return to an 80% schedule); ¶37 (Plaintiff reiterated to Defendant Di Stefano the "work-family" concerns she previously raised with Defendant Haelen); ¶37 (Plaintiff complained she was forced to work at home after putting her children to sleep); ¶38 (references request for reduced workload to 80%); ¶39 (references request for reduced workload); ¶39 (Plaintiff requests being able to use excess hours to "take time off to be with her children"); ¶42 (Plaintiff claims her concerns about the amount of time she has to care for her daughters had not been addressed); ¶42 (Plaintiff references modifying her own request for time off); ¶42 (Plaintiff requests she be permitted to take off every other Tuesday for two hours and every other Thursday (opposite weeks) to spend time caring for her daughters; ¶45 (alleges "refusal" to accommodate her with an 80% work schedule); ¶47

(Plaintiff proceeds with taking time off pursuant to her own request); ¶55 (Plaintiff expressed concern that the amount of time her youngest daughter had before she began full-time school was dwindling); ¶65 (Plaintiff "protested she did not have childcare lined up" when defendant told plaintiff she needed to attend a meeting); ¶70 (Plaintiff demanding an explanation as to how she was supposed to get her work done and whether she was expected to work nights and weekends); ¶71 (Plaintiff requested to work from home since she was the only parent home that night); ¶72 (alleges "denial" of request to work 80% work week); ¶72 (references attempts to take time off to be with her daughters). Plaintiff alleges that Defendants responded to these overtures by reiterating to her that they wanted her to work a regular work week, that her work week may involve nights and weekends, and that they expected her to get her work done. *See* Complaint, ¶¶30, 33, 62, 70. As a result, it was *Plaintiff* who was looking for a change in the terms and conditions of her employment based on her desire to spend more time with her children. Defendants' unwillingness to grant her requests for accommodations (no matter how "modest" the requests are alleged to be) does not equate to the creation of a hostile work environment, let alone one that was motivated by sex stereotypes held by Defendants. Therefore, nothing in the Complaint can plausibly be read to assert a sex stereotype claim, and Plaintiff's claims must be dismissed.

## II.  PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE HER PERSONAL ADVOCACY AND COMPLAINTS OF GENERALIZED BULLYING DO NOT CONSTITUTE PROTECTED SPEECH OR ACTIVITY.

### A. <u>Plaintiff's personal advocacy for her own benefit to spend more time at home is not speech protected by the First Amendment.</u>

Plaintiff's brief fails to show that her alleged "speech" touched upon a matter of public concern such that it was afforded protection under the First Amendment. Rather, the actual allegations in Plaintiff's Complaint demonstrate the truly personal nature of her speech. Specifically, Plaintiff alleges in her Complaint that her speech consisted of issues she raised about

6

*her* compensation for excessive hours *she* had been working and *her* claimed entitlement to compensation under a resolution passed in 1999. *See* Complaint, ¶¶ 31, 40. Plaintiff also alleges that she viewed this extra time as a way that *she* could "take time off to be with her children." *Id.*, ¶39. Plaintiff's alleged speech also took place exclusively in Plaintiff's workplace, to her supervisors, and was aimed at improving her personal conditions of employment.

Despite these facts that establish that Plaintiff's speech did not address a matter of public concern sufficient to merit the protections of the First Amendment, Plaintiff nonetheless argues that her speech should be considered to rise to the level of comment on a public concern because it *could* implicate the compensation and working conditions of other employees at the Fund. In support of this argument, Plaintiff relies on the Courts' decisions in *NYS Law Officers Union v. Andreucci*, 433 F.3d 320 (2d Cir. 2006) and *Wallace v. Suffolk County Police Dep't*, 2007 U.S. Dist. LEXIS 98745 (E.D.N.Y. 2007). However, neither of these cases support Plaintiff's arguments. Instead, they demonstrate Plaintiff's speech was not protected under the First Amendment.

In *Andreucci*, the Court made clear that whether speech is protected under the First Amendment depends upon the nature and context of the speech. *Andreucci*, 433 F.3d at 330. In *Andreucci*, the plaintiff, a correction officer and union representative at the Albany County Correctional Facility, spoke to the County Legislature during the open public comment period of a public meeting, alleging that the undersheriff was taking members of the union out of bid jobs as a means of disciplining them. *Id.* The Court determined that the plaintiff's speech touched upon a matter of public concern to a sufficient extent to be protected by the First Amendment because it involved the lawfulness of public officials' actions who were under the Legislature's control, it was directed to County Legislators at a public meeting, and the plaintiff expressly stated that he was speaking "as a citizen of the County." *Id.* None of these factors relied on by the Court in

7

determining that the plaintiff's speech in *Andreucci* touched upon a matter of public concern are even remotely related to Plaintiff's speech in this case. Rather, Plaintiff was advocating in her own workplace, to her own supervisors, and for the purpose of obtaining additional benefits solely for herself – all hallmarks of an employee's speech in the public employment context that is not entitled to First Amendment protection.

Similarly, in *Wallace* a police officer raised numerous concerns about the training that officers in the County received at the FBU SWAT school and the US EPA HAZMAT school and the fact that this training was inadequate to properly prepare police officers in the County for situations they regularly were required to face. *Wallace v. Suffolk County Police Dep't*, 2007 U.S. Dist. LEXIS 98745 (E.D.N.Y. 2007). The Court found this speech to be of significant concern to the general public even though it was made internally at the workplace because it was analogous to "speech on crime rates, police staffing, equipment shortages and related budgetary matters" that "quite plainly involve matters of public concern." *Id.* Unlike any speech alleged by Plaintiff in this case, the police officer's speech in *Wallace* was directed to issues well beyond his own personal circumstances and which affected the entire community. Nothing in Plaintiff's Complaint can reasonably be read to suggest that Plaintiff's speech had such a far reaching purpose. Therefore, her claims under the First Amendment must be dismissed.

B. **Plaintiff's complaint of generalized bullying does not constitute protected activity under Title VII because there was no basis to conclude that any alleged bullying related to her sex.**

Plaintiff failed to allege in her Complaint that any of her internal complaints at work were in any way tied to any alleged mistreatment *on the basis of her sex* or other misconduct that might violate Title VII. In fact, Plaintiff's brief makes clear that the only purported theory of discrimination that is being advanced by Plaintiff is that she was being treated in a hostile manner by Defendants because she is a *woman* with young children. However, Plaintiff's Complaint does

8

not contain a single allegation that she ever complained to anyone that any of Defendants' alleged actions toward her were somehow motivated by the fact that she was a *woman*.

Plaintiff necessarily acknowledges in her brief that she never used the words "discrimination" or "sexual harassment" when complaining to Ms. Lais about allegedly being bullied in the workplace. To get around this fact, Plaintiff's relies on the Court's holding in *Bader v. Special Metals Corp.* for the proposition that a complainant does not have to use the word "discrimination" or other talismanic language to establish that he or she engaged in protected activity when complaining of alleged discriminatory conduct. In *Bader,* the plaintiff never expressly stated in her internal complaint that she was being "discriminated" against because of her gender. However, the Court found that the plaintiff did complain that she was subjected to crude jokes at work about her body and about her sexual relationship with her husband and that she was subjected to misogynistic drawings in the workplace. *Bader*, 985 F.Supp. 2d at 320. Based on these facts, the Court concluded that, although the plaintiff never expressly used the word "discrimination" when she made her internal workplace complaint, the precise conduct she complained about unambiguously informed her employer that the conduct she claimed she was subjected to fell within the prohibitions of Title VII. *Id.* Thus, while Plaintiff properly relies on *Bader* to support her very narrow argument, she blindly ignores the rest of the Court's holding in *Bader* which, in fact, undermines her claim and establishes that she has failed to allege any facts that plausibly suggest that she engaged in any activity protected under Title VII.

In contrast to the specific type of allegations at issue in *Bader* that clearly implicated Title VII, when an employee, such as Plaintiff, complains only of generalized bullying or hostility that is not reasonably clear to be based on sex, the complaints do not constitute activity protected under Title VII. *See, e.g., Lynch v. National Fuel Gas Distribution Corp.*, 25 F.Supp. 3d 358 (W.D.N.Y. 2014)(complaint dismissed because "nothing in the substance or delivery of plaintiff's complaint

of generalized 'bullying' or 'unreasonable' performance expectations could possibly have placed [her employer] on notice that plaintiff was complaining about unlawful discrimination); *Kelly*, 716 F.3d 10 (2d Cir. 2013)(complaint dismissed where plaintiff "made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise"). Since Plaintiff's Complaint lacks any allegation that could reasonably be said to have put Defendants on notice that she was complaining that she was subjected to a hostile work environment *because of her status as a woman*, Plaintiff failed to properly allege she engaged in any "protected activity" necessary to support a claim of retaliation under Title VII. Therefore, her claim should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Memorandum of Law in Support of Defendants Motion to Dismiss, Defendants' motion should be granted in its entirety.

Dated: December 15, 2017
Albany, New York

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
The Capitol
Albany, New York 12224-0341

By: *s/Brian W. Matula*
Brian W. Matula, Esq.
Assistant Attorney General, of Counsel
Bar Roll No. 511717
Telephone: (518) 776-2599
Fax: (518) 915-7738 (Not for service of papers.)
Email: Brian.Matula@ag.ny.gov