UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERESE MEAGHER,

                Plaintiff,

v.                                                          1:17-CV-0903
                                                            (GTS/CFH)
STATE UNIVERSITY CONSTRUCTION FUND;
ROBERT HAELEN, in his official and individual
capacities; and JOANNE Di STEFANO, in her
official and individual capacities,

                Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

TABNER, RYAN & KENIRY, LLP                       THOMAS R. FALLATI, ESQ.
  Counsel for Plaintiff
18 Corporate Woods Boulevard
Albany, New York 12211

HON. BARBARA UNDERWOOD                           BRIAN W. MATULA, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GIRVIN & FERLAZZO, P.C.                           PATRICK J. FITZGERALD III, ESQ.
  Co-Counsel for Defendants
20 Corporate Woods Boulevard
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this civil rights action filed by Terese Meagher

("Plaintiff") against the State University Construction Fund ("SUCF"), Robert Haelen, and

Joanne Di Stefano (collectively "Defendants") pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII"), the First and Fourteenth Amendments to the United States Constitution, and

the New York State Human Rights Law codified at N.Y. Exec. L. § 296 ("NYSHRL"), is

Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief

can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 10.)  For the reasons set forth

below, Defendants' motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts seven causes of action.  (Dkt.

No. 1 [Pl.'s Compl.].)  First, Plaintiff claims that Defendant SUCF engaged in discrimination

related to the terms and conditions of her employment on account of her gender by subjecting

her to a hostile work environment in violation of Title VII ("First Claim").  (*Id.* at ¶¶ 111-13.)

Specifically, Plaintiff alleges that SUCF, through its employees, Haelen and Di Stefano, created

a hostile work environment by failing to accommodate her request to return to an 80-percent

workweek, expressing disapproval over her use of time off to leave early on certain Tuesdays

and Thursdays, and making hostile and demeaning statements to Plaintiff, including statements

regarding her parenting needs.  (*Id.* at ¶¶ 48-72, 75.)

Second, Plaintiff claims that SUCF retaliated against her for engaging in protected

activity in violation of Title VII ("Second Claim").  (*Id.* at ¶¶ 114-16.)  Specifically, Plaintiff

alleges that, after she submitted an oral complaint to the human resources department regarding

the hostile and bullying conduct to which Di Stefano subjected her, (a) she was told that there

were performance issues with her work, (b) she was told that all her communications with SUCF

staff had to go through Di Stefano, (c) Di Stefano excluded her from meetings in which she had

historically participated, (d) Di Stefano removed work assignments from her, (e) Di Stefano failed to respond to multiple requests for time out of the office, and (f) SUCF failed to conduct a timely investigation or otherwise prevent continuing conduct.  (*Id.* at ¶¶ 74-92.)

Third, Plaintiff claims that Haelen and Di Stefano deprived her of her rights pursuant to the Equal Protection Clause of the Fourteenth Amendment through the following actions: (a) they discriminated against her on account of her gender and family status, and (b) Haelen failed to supervise or train Di Stefano related to that discriminatory conduct ("Third Claim").  (*Id.* at ¶¶ 117-21.)

Fourth, Plaintiff claims that Haelen and Di Stefano retaliated against her in violation of the First Amendment after she engaged in protected speech through reports about (a) SUCF's non-compliance with a policy adopted by its Board of Trustees (the "1999 Resolution") regarding compensation for working excessive hours, (b) the aforementioned conduct directed at her by Di Stefano, (c) Di Stefano's violations of SUCF's anti-bullying policy, and (d) SUCF's non-compliance with its own procedures.  (*Id.* at ¶¶ 122-25.)  Plaintiff additionally alleges that Haelen failed to supervise or train Di Stefano related to that retaliatory conduct ("Fourth Claim").  (*Id.* at ¶ 125.)

Fifth, Plaintiff claims that Haelen and Di Stefano deprived her of her rights under the substantive Due Process Clause of the Fourteenth Amendment by arbitrarily and capriciously denying her compensation credit for excessive time worked pursuant to the 1999 Resolution, alleging also that she held a property interest in receiving such credit for excessive time ("Fifth Claim").  (*Id.* at ¶¶ 127-29.)

Sixth, Plaintiff claims that Haelen and Di Stefano engaged in discrimination related to the terms and conditions of her employment on account of her gender and family status by subjecting her to a hostile work environment in violation of the NYSHRL based on the same conduct underlying her discrimination claim pursuant to Title VII ("Sixth Claim").  (*Id.* at ¶¶ 130-32.)

Seventh, Plaintiff claims that Haelen and Di Stefano retaliated against her for engaging in protected activity in violation of the NYSHRL based on the same conduct underlying her retaliation claim pursuant to Title VII ("Seventh Claim").  (*Id.* at 133-35.)

### B.   Parties' Briefing on Defendants' Motion to Dismiss

#### 1.   Defendants' Memorandum of Law

Generally, Defendants move to dismiss Plaintiff's Complaint for seven reasons.  (Dkt. No. 10, Attach. 1 at 6-25 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's claim for gender discrimination based on a hostile work environment pursuant to Title VII should be dismissed because she has not alleged conduct related to her gender that rose to the level of a hostile work environment.  (*Id.* at 6-11.)  More specifically, Defendants argue that Plaintiff does not include any allegations that Defendants remarked on her gender specifically or treated her differently than male employees, but that her allegations show that conduct by Defendants was related to factors such as her schedule, requests for time off, work performance, and compensation.  (*Id.* 8-10.)

Second, Defendants argue that Plaintiff's claim for retaliation pursuant to Title VII should be dismissed because she has not alleged that she was engaged in protected activity.  (*Id.* at 11-13.)  More specifically, Defendants argue that, although Plaintiff alleges that she reported

to Haelen and SUCF that Di Stefano acted hostilely towards her and "bullied" her, she did not allege that she reported that this conduct was motivated by discriminatory animus because she was a woman. (*Id.* at 12.)

Third, Defendants argue that Plaintiff's claim for gender discrimination pursuant to the Equal Protection Clause should be dismissed because she has not identified any similarly situated individuals but rather has provided insufficient generalized statements made "upon information and belief" that do not identify any specific attributes of comparable employees from which this Court can determine whether those individuals were similarly situated to Plaintiff. (*Id.* at 13-15.) Further, to the extent Plaintiff's claim is based on gender, Defendants argue that this claim should be dismissed for the same reasons that her Title VII claim should be dismissed because the same analytical framework is applicable to both claims. (*Id.* at 16.) To the extent Plaintiff's claim is based on familial status, Defendants argue that (a) Plaintiff's status as a parent is not a protected class under federal law, and (b) she has failed to identify any individual who has children and who was treated more favorably. (*Id.* at 17.)

Fourth, Defendants argue that Plaintiff's retaliation claim pursuant to the First Amendment should be dismissed because her reports of allegedly discriminatory and hostile conduct were related to matters of private (rather than public) concern that were directed to her supervisors and human resources personnel and are therefore not entitled to protection in light of her status as a public employee. (*Id.* at 18-20.)

Fifth, Defendants argue that Plaintiff's substantive due process claim pursuant to the Fourteenth Amendment should be dismissed because she has not alleged facts plausibly suggesting that (a) the actions taken to deny her credit for excessive work time were unique to

Defendants' role as a governmental entity, or (b) the conduct at issue was outrageous or egregious. (*Id.* at 21-22.)

Sixth, Defendants argue that claims for discrimination and retaliation based on gender and familial status pursuant to the NYSHRL should be dismissed because Plaintiff has not alleged sufficient facts to state a claim. (*Id.* at 22-25.) As to Plaintiff's claims based on gender, Defendants argue that these claims should be dismissed for the same reasons that her Title VII claims should be dismissed because the same analytical framework is applicable to both claims. (*Id.* at 22-23.) As to Plaintiff's claims based on familial status, Defendants argue that, although familial status was added as a protected category under the NYSHRL in January 2016, the NYSHRL does not impose an obligation on employers to make accommodations to allow employees to care for their children and does not require the Court to consider incidents occurring before familial status was added as a protected category. (*Id.* at 23-25.) Defendants argue that Plaintiff has alleged not that she was treated differently from other similarly situated individuals based on her status as a parent, but that she was denied accommodations to care for her children. (*Id.* at 23-24.)

Seventh, and last, Defendants argue that, if the Court dismisses all of Plaintiff's federal law claims but does not dismiss her state law claims, the Court should decline to exercise supplemental jurisdiction over those remaining state law claims. (*Id.* at 25.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts six arguments in opposition to Defendants' motion. (Dkt. No. 12, at 10-30 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that she has sufficiently pled a valid gender discrimination claim under Title VII because her Complaint sufficiently alleges (a)

discriminatory intent and (b) a hostile work environment. (*Id.* at 10-22.) As to her allegations of discriminatory intent, Plaintiff argues that she has sufficiently plead a Title VII claim pursuant to a "gender plus" theory by alleging that she was a woman with children. (*Id.* at 10-15.) Plaintiff further argues that her allegations in the Complaint that Di Stefano and Haelen questioned her ability to perform her job based on her status as a mother, along with their sudden criticism of her work performance after years of positive performance reviews and their retaliatory response to her human resources complaint, are sufficient to plead that Defendants acted with discriminatory intent. (*Id.* at 15-19.) As to her allegations of a hostile work environment, Plaintiff argues that a hostile work environment has been plausibly suggested by the facts alleged, including (a) the duration of the conduct (from the summer of 2015 through June 2016), (b) the consistent and ongoing nature of the humiliating statements and conduct to which she was subjected, and (c) the interference with her ability to conduct her work and the psychological harm she suffered as a result of the objectionable conduct. (*Id.* at 20-22.)

Second, Plaintiff argues that she has pled a valid retaliation claim under Title VII because (a) her complaints to her supervisors and the human resources department did not need to explicitly mention discrimination or use specific language in order to constitute protected activity, and (b) SUCF, Haelen, and Di Stefano all had notice of the protected conduct based on her statements to them and to human resources personnel. (*Id.* at 22-24.)

Third, Plaintiff argues that she has pled a valid gender discrimination claim under the Equal Protection Clause for the same reasons that she has pled valid discrimination/hostile work environment and retaliation claims. (*Id.* at 25.)

Fourth, Plaintiff argues that she has pled a valid retaliation claim under the First Amendment because (a) her statements addressing SUCF's compliance with the 1999 Resolution (which was applicable to all management confidential employees) and Di Stefano's non-compliance with SUCF's procedures (which implicated compensation and working conditions of fund employees) were related to matters of public concern, and (b) her statements were not made as part of her official duties. (*Id.* at 25-27.) Plaintiff also argues that the mere fact that she made the relevant statements to her supervisors is not a basis for restricting her First Amendment rights. (*Id.* at 27.)

Fifth, Plaintiff argues that she has pled a valid substantive due process claim under the Fourteenth Amendment because the Complaint sufficiently alleges that Defendants' decision to deprive her of her rights pursuant to the 1999 Resolution was intentional and arbitrary, particularly given that Defendants did not offer any rationale for that decision. (*Id.* at 27-29.)

Sixth, Plaintiff argues that she has pled valid claims under the NYSHRL for several reasons. (*Id.* at 29-30.) More specifically, Plaintiff argues that (a) the allegations in the Complaint plausibly suggest a hostile work environment, (b) the Complaint's reference to numerous instances in which Defendants mentioned Plaintiff's familial status in connection with the relevant hostile conduct plausibly suggests a discriminatory motive, and (c) there are sufficient alleged incidents occurring after January 19, 2016, to survive a motion to dismiss. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, Defendants assert two arguments in reply to Plaintiff's arguments. (Dkt. No. 16, at 3-12 [Defs.' Reply Mem. of Law].) First, Defendants argue that Plaintiff has not alleged

that she was subjected to a hostile work environment because of her gender, noting that, in the

Complaint, Plaintiff consistently describes herself as a "parent" rather than a "woman" or

"mother." (*Id.* at 3-4.) Defendants argue that, even if her claim is based on a "gender plus"

theory of discrimination in which the "plus" is having children, Plaintiff has not alleged that the

hostility was directed toward her because of her gender (i.e., that Defendants discriminated

against her because she was a mother specifically rather than a parent). (*Id.* at 4-6.) Defendants

argue that it was Plaintiff, not Defendants, who continuously made her status as a parent part of

employment discussions and that Defendants' refusal to accommodate Plaintiff's childcare needs

does not constitute a hostile work environment based on her gender. (*Id.*)

Second, Defendants argue that Plaintiff's First Amendment claim should be dismissed

because her requests to spend more time at home with her children and to receive credit for

excessive hours worked were merely acts of personal advocacy and not public speech, and

therefore do not constitute protected speech. (*Id.* at 8-12.) As to Plaintiff's complaints of

bullying, Defendants argue that she has not alleged that the incidents occurred because of her

gender. (*Id.* at 10-12.)

## II.   LEGAL STANDARD GOVERNING A MOTION TO DISMISS

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de

novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

11

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

III.     ANALYSIS

A.     Whether Plaintiff Has Stated a Claim for Hostile Work Environment

After carefully considering the matter, the Court answers this question in the negative as to Plaintiff's claims pursuant to Title VII and the NYSHRL based on her gender for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 10, Attach. 1, at 6-11 [Defs.' Mem. of Law]; Dkt. No. 16, at 3-8 [Defs.' Reply Mem. of Law].)  However,  the Court answers this question in the affirmative as to Plaintiff's claim pursuant to the NYSHRL based on her familial status for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 12, at 29-30 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Second Circuit has defined a hostile work environment pursuant to Title VII as a workplace that is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010).  It is not sufficient that a plaintiff subjectively perceives the environment to be abusive; rather, the environment must also be objectively hostile and abusive.  *Gorzynski*, 596 F.3d at 102.  When considering whether a defendant's conduct created a hostile work environment, the Court looks to a variety of factors, including (a) the frequency of the conduct, (b) the severity of the conduct, (c) whether the conduct is physically threatening or humiliating or a mere offensive utterance, (d) whether the conduct unreasonably interferes with an employee's work performance, and (e) the extent to which the conduct occurred because of Plaintiff's gender/sex. *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 [1993]; *Alfano v. Costello*, 294 F.3d 365, 374 [2d Cir. 2002]).

Pursuant to Second Circuit law, "[t]o state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 [2d Cir. 2001]).  In other words, "to avoid dismissal under [Fed. R. Civ. P.] 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 [2d Cir. 2003]).  The standard for assessing hostile work environment or discrimination is the same for claims pursuant to both Title VII and the NYSHRL.  *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010).

Defendants argue principally that Plaintiff has not stated a claim for hostile work environment because she failed to allege facts plausibly suggesting that any allegedly hostile conduct directed toward her was caused by her status as a woman.  Plaintiff responds by arguing that she has not alleged discrimination/hostile work environment based solely on her status as a woman, but rather as her status as a woman with children pursuant to a gender-plus theory of liability.  However, as Defendants argue, even under a gender-plus theory, Plaintiff must still allege facts plausibly suggesting that the discrimination or hostile work environment was based, in part, on the fact that she is a woman.  *See Trezza v. Hartford, Inc.*, 98-CV-2205, 1998 WL 912101, at *6 (S.D.N.Y. Dec. 30, 1998) ("[T]he sex-plus theory of discrimination

notwithstanding, a plaintiff must still prove disparate treatment between men and women in order to prevail on a Title VII discrimination claim.") (citing cases).  Whether discriminatory or hostile conduct was based on an individual's gender or sex can be proven by showing (a) harassment conducted in sex-specific or derogatory terms, or (b) by showing "'some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.'"  *Pucino*, 618 F.3d at 117-18.

The Court finds that Plaintiff has not alleged facts plausibly suggesting that the allegedly hostile and demeaning conduct directed toward her by Di Stefano and Haelen was because of her gender.  Plaintiff implies that Di Stefano began to engage in this conduct after she (a) requested to return to an 80-percent work schedule, (b) raised concerns about working excessive hours and sought compensatory time for those hours, and (c) began taking weekly time off on alternating Tuesdays and Thursdays; Plaintiff alleges that all of these requests were specifically related to her desire to care for her children.  (Dkt. No. 1, at ¶¶ 30-31, 34, 37, 39-40, 42-43, 45, 48 [Pl.'s Compl.].)  However, Plaintiff's allegations do not plausibly suggest that this conduct was motivated by the fact that she was a *woman* with children specifically.  Notably, the only allegations that even remotely suggest that Di Stefano and Haelen's conduct was related to her status as a woman with children are the statements that Plaintiff alleges those Defendants made to her: (1) Di Stefano's statements that she herself works every night and weekend despite the likely negative impact on her personal life, that she had taken a lower-paying job in the past to spend more time with her daughter, and that "wouldn't it be nice if we could go home and eat dinner with our families"; (2) Di Stefano's statement that she herself had been working nights and the whole weekend in response to Plaintiff's protestations of being told to come in on her

day off when she did not have childcare arranged; (3) Di Stefano's statement criticizing Plaintiff

for requesting time off to spend time with her daughters, her statement that she herself had had to

make the choice in the past between working at a previous job or being able to work from home

with her daughter, and her statement that she currently worked 75 hours per week including

nights and weekends; (4) Di Stefano's statement to Plaintiff that she could not use time worked

at home during a night when she was the only parent home to replace time for which she had

been out of the office, a decision that Plaintiff believes is contrary to the practices of prior SUCF

counsel; and (5) Haelen's statement that he had sacrificed parenting for work, that Plaintiff had

acted immature and unprofessional by getting emotional in a meeting with Di Stefano about

work-parenting issues, and that Plaintiff had been experiencing problems with work-parenting

balance for a very long time.  (Dkt. No. 1, at  ¶¶ 56, 65, 69, 71, 75 [Pl.'s Compl.].)

       Contrary to Plaintiff's assertions, these statements, as a whole, do not plausibly suggest

that Defendants' alleged conduct was because of her gender in combination with her status as a

parent.  Notably, although these statements (along with other allegations in the Complaint) do

suggest that Defendants questioned to some extent whether Plaintiff was more committed to her

work or her children, the allegations do not plausibly suggest that the questions were based on

Plaintiff's status as a woman specifically or any related gender stereotypes.  The statements

made by Di Stefano and Haelen certainly do not rise to the level of those in the cases relied on

by Plaintiff in which courts found the existence of actionable gender stereotyping or gender-plus

discrimination.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (finding gender

discrimination in comments that the female plaintiff was "macho" and "masculine,' needed "a

course in charm school," and needed to "walk more femininely, talk more femininely, dress

16

more femininely, wear make-up, have her hair styled, and wear jewelry" if she wanted to become a partner); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 120-22 (2d Cir. 2004) (finding that stereotyping women as caregivers can be evidence of an impermissible sex-based motive in the context of statements that a woman cannot be a good mother and have a job requiring long hours and that a mother who receives tenure would not show the same level of commitment as when she did not hold tenure because of her children); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50, 57 (1st Cir. 2000) (finding sufficient evidence to survive a motion for summary judgment where the evidence showed, among other things, that the plaintiff's supervisor questioned her multiple times, without prompting, whether it was possible for her to handle her job responsibilities, her childcare responsibilities, and her marital obligations [such as cooking for her husband] and where the supervisor made statements such as that he "preferred unmarried, childless women because they would give 150% to the job"); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 42 (1st Cir. 2009) (noting statements including the plaintiff's supervisor's surprise that she had four children, a former supervisor mentioning her status as a mother without prompting during an interview, and denying her a promotion because "you're going to school you have the kids and you just have a lot on your plate right now"); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1042-43 (7th Cir. 1999) (noting statements by supervisors that the plaintiff's termination would hopefully give her more time to spend with her children and that she had been fired because it was felt that "this would be a good time for [her] to spend some time with her family" as being evidence of discriminatory intent because such statements could be understood to be stereotypes of women as caregivers).

However, unlike these cases, Plaintiff's allegations, particularly as to the statements of DiStefano and Haelen, do not plausibly suggest that Defendants acted based on an assumption that Plaintiff could not perform her job as well as a childless woman.  As Defendants argue, Plaintiff's allegations in the Complaint allege that it was she who continuously brought the fact that she was a parent who wished to have more time to spend with her children to Di Stefano and Haelen's attention during work-related conversations when requesting a decreased schedule and workload, compensatory time off, and days off; there are no allegations suggesting that Defendants improperly assumed that Plaintiff could not perform her job based on stereotypes of motherhood.  Nor does Plaintiff include any allegations showing that men with children were treated differently.  *See DeFranco v. Ametek Ameron, LLC*, 12-CV-0670, 2013 WL 992287, at *5 (E.D.N.Y. Mar. 13, 2013) (finding failure to state a claim for sex-plus-familial status discrimination where a father failed to allege that his employer treated mothers and fathers differently).  Lastly, a single incident of Plaintiff being chastised for being "emotional" during a meeting (which presumably could be construed as a stereotype specific to women in some contexts) does not constitute a gender-based stereotype given the lack of other allegations supporting an inference of gender discrimination.  *See Dermoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'")  The Complaint simply does not allege sufficient facts to plausibly suggest that Di Stefano or Haelen acted with discriminatory intent based on Plaintiff's gender-specific status as a mother.

As Defendants note, familial status was added as a protected category to N.Y. Exec. L. § 296 on January 19, 2016.  N.Y. Exec. L. § 296.  In response to Defendants' argument that most of the alleged conduct occurred before January 19, 2016, Plaintiff argues that "there are more than adequate post-January 19, 2016, actions that support the allegations."  (Dkt. No. 10, Attach. 1, at 24-25 [Defs.' Mem. of Law]; Dkt. No. 12, at 30 [Pl.'s Opp'n Mem. of Law].)  The Court agrees with Plaintiff because the majority of the alleged discriminatory or hostile actions occurred after that date.  (Dkt. No. 1, at ¶¶ 49-92 [Pl.'s Compl.].)  Consequently, Plaintiff's claim cannot be so easily dismissed based on the date familial status was added to N.Y. Exec. L. § 296.

The Court finds that, at this early stage in the litigation, Plaintiff has alleged sufficient facts (albeit barely) to state a plausible claim for hostile work environment discrimination based on familial status pursuant to the NYSHRL.  In particular, divorced from the issue of Plaintiff's gender, the Complaint alleges facts plausibly suggesting that the conduct by Di Stefano (and, to some extent, Haelen) was related to Plaintiff's expressed desire to spend more time with her children and therefore implicate her status as a parent.  (Dkt. No. 1, at ¶¶ 56, 65, 69, 71, 75 [Pl.'s Compl.].)  Whether or not Defendants' conduct regarding Plaintiff's requests for time off in particular were a denial of accommodation not actionable under the NYSHRL rather than impermissible hostile conduct based on her status as a parent is a factual matter that should more appropriately be decided after discovery has been conducted.

For all of the above reasons, the Court grants Defendants' motion in part and finds that the claim for hostile work environment discrimination pursuant to Title VII and the NYSHRL on account of her gender should be dismissed.  However, the Court denies Defendants' motion

seeking dismissal of the claim for hostile work environment discrimination pursuant to the NYSHRL on account of her familial status.

**B.      Whether Plaintiff Has Stated a Claim for Retaliation**

After carefully considering the matter, the Court answers this question in the affirmative as to Plaintiff's claims pursuant to Title VII and the NYSHRL for the reasons stated in her opposition memorandum of law.  (Dkt. No. 12, at 22-25 [Pl.'s Opp'n Mem. of Law].)  However, the Court answers this question in the negative as to Plaintiff's claim pursuant to 28 U.S.C. § 1983 and the First Amendment for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 10, Attach. 1, at 18-20 [Defs.' Mem. of Law]; Dkt. No. 16, at 8-10 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

**1.      Retaliation Pursuant to Title VII and the NYSHRL**

The Second Circuit has noted that, "[f]or a retaliation claim to survive a motion to dismiss, a 'plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice.'"  *Shaw v. McDonald*, 715 F. App'x 60, 62 (2d Cir. 2018) (quoting *Vega v. Hampstead Union Free Sch. Dist.*, 801 F.3d 72, 90 [2d Cir. 2015]); *see also Serrano v. New York State Dept. of Envtl. Conservation*, 714 F. App'x 90, 92 (2d Cir. 2018) ("To sustain a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that '[1] she was engaged in protected activity; [2] the employer was aware of that activity; [3] the employee suffered a materially adverse action; and [4] there was a causal connection between the protected activity and that adverse action.'").  "Title VII retaliation claims must be proved according to traditional principles of but-for causation."  *Univ. of Texas S.W. Medical Cntr v. Nassar*, 570 U.S. 338, 360 (2013).

An adverse employment action in the context of a retaliation claim pursuant to Title VII is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 [2006]).  Notably, adverse actions in the retaliation context are not limited to actions that affect the terms and conditions of employment.  *Vega*, 801 F.3d at 90.  As to causation, "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.*  Notably, the analytical framework for retaliation claims pursuant to Title VII is also applicable to retaliation claims pursuant to the NYSHRL.  *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

The Court finds that Plaintiff has alleged sufficient facts to state plausible claims for retaliation pursuant to Title VII and the NYSHRL.  First, Plaintiff has alleged that she engaged in protected activity, the most notable example being her making a complaint to the human resources department regarding Di Stefano's allegedly hostile and bullying conduct.  (Dkt. No. 1, at ¶ 78 [Pl.'s Compl.].)  Contrary to Defendants' argument, the Complaint plausibly suggests (albeit barely) that Plaintiff reasonably believed she was reporting conduct that violated Title VII in the form of gender-plus discrimination based on various statements made to her by Di Stefano and Haelen. *See Pinner v. Budget Mortg. Bankers, Ltd.*, 169 F. App'x 599, 600 (2d Cir. 2006) ("To establish that she engaged in a protected activity, a plaintiff must show only that she had a good faith, reasonable belief that the conduct of her employer about which she complained violated Title VII."); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[A] plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a 'good faith, reasonable

belief that the underlying challenged actions of the employer violated th[at] law'") (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 [2d Cir. 1998]).

Second, Plaintiff has included sufficient allegations to plausibly suggest that Defendants were aware of this activity, including that Plaintiff discussed her concerns and desire to file a complaint with Haelen before she filed the complaint, that a human resources employee acknowledged receipt of her complaint, and that Plaintiff continued to interact with and provide information to human resources throughout the investigation into her complaint. (*Id.* at ¶¶ 77, 79, 82-84.) *See also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (finding knowledge of protected activity established where the plaintiff had complained to an officer of the company and maintained her complaint during a subsequent internal investigation).

Third, Plaintiff has included sufficient allegations to plausibly suggest that she suffered an adverse action in the form of hearing concerns about her performance that had not been previously raised, being told she was no longer allowed to communicate directly with the SUCF (which she alleges was essential to being able to perform the duties of her job), being excluded from meetings to which she had historically been invited and which were germane to her job duties, being excluded from legal department meetings and meetings with outside counsel and the Attorney General's Office, removal of work assignments without explanation, and not receiving a response from Di Stefano to her multiple requests for time off for both personal and professional activities. (*Id.* at ¶¶ 80-81, 86-88, 90, 92, 97.) These allegations are sufficient to plausibly suggest that a reasonable worker could be dissuaded from engaging in protected activity by such actions, particularly as some of these actions prevented Plaintiff from effectively performing her job duties.

22

Fourth, the allegations plausibly suggest a causal connection between Plaintiff's complaint and the alleged retaliatory actions. Specifically, Plaintiff alleges that she made her complaint on March 18, 2016, and that the first incident (Di Stefano's requiring her to direct communications with SUCF through Di Stefano rather than directly to SUCF) occurred on March 21, 2016, only three days later, with other conduct occurring at unspecified times between March 18, 2016, and June 2016. (*Id.* at ¶¶ 78, 81, 88, 90, 92.) The relatively short amount of time between Plaintiff's complaint and the alleged retaliatory conduct, together with the comments by Haelen and Di Stefano, are sufficient to create a plausible inference of causation for a *prima facie* case of retaliation.

Because the allegations in the Complaint are sufficient to state a plausible claim for retaliation under both Title VII and the NYSHRL, Defendants' motion as to these claims is denied.

### 2.    First Amendment Retaliation

A public employee may establish a claim for retaliation pursuant to the First Amendment against a governmental employer under 28 U.S.C. § 1983 if (1) the plaintiff's speech was constitutionally protected, (2) the plaintiff suffered an adverse employment action, and (3) there is a causal connection between the speech and the adverse employment action. *Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158, 165 (N.D.N.Y. 2009) (Sharpe, J.) (quoting *Washington v. Cnty of Rockland*, 373 F.3d 310, 320 [2d Cir. 2004]). "The First Amendment protects a public employee's speech only when it is 'made as a citizen on matters of public concern rather than as an employee on matters of personal interest.'" *Shanks*, 653 F. Supp. 2d at 165 (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 [2d Cir. 2003]). Matters of public concern

include "'any matter of political, social, or other concern to the community.'"  *Id.*  "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record,'" and a consideration of "whether the speech 'was calculated to redress personal grievances or whether it has a broader public purpose.'"  *Shanks*, 653 F. Supp. 2d at 165 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 [1983]); *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006).

The Court finds that Plaintiff has not sufficiently pled facts to state a claim for First Amendment retaliation.  As Defendants argue, Plaintiff has not pled facts plausibly suggesting that her statements to Haelen and human resources about (a) SUCF's non-compliance with the 1999 Resolution, (b) SUCF's non-compliance with its own procedures, (c) Di Stefano's conduct, and (d) violations of SUCF's anti-bullying policy were addressed to matters of public concern. Although Plaintiff has attempted to spin her statements on these issues as being of general relevance to all employees impacted by the 1999 Resolution and SUCF's anti-bullying policy and other procedures, Plaintiff's Complaint does not allege facts plausibly suggesting that these statements were anything other than complaints related to her own personal grievances and circumstances.  (Dkt. No. 12, at 25-26 [Pl.'s Opp'n Mem. of Law].)  More specifically, although Plaintiff argues that her statements "addressed more broadly the Board's compliance with the 1999 Resolution and its compliance with policies," the Complaint does not contain such general objections to Defendants' policies or their implementation; instead, the allegations in the Complaint indicate that Plaintiff's statements were limited to addressing the concerns of her personal situation.  (Dkt. No. 1 at ¶¶ 31, 37-40, 45, 70-71 [Pl.'s Compl.].)  The fact that these policies were applicable to other employees does not by itself elevate Plaintiff's complaints

about how they were applied to her specifically to a matter of public concern. The Court therefore finds that Plaintiff has not plausibly suggested that her speech was protected under the First Amendment and, consequently, she has not stated a claim of First Amendment retaliation upon which relief can be granted.

As part of this claim, Plaintiff also alleges that Haelen violated her constitutional rights by failing to supervise or train Di Stefano as to the conduct giving rise to Plaintiff's allegations for this claim. (Dkt. No. 1, at ¶ 120 [Pl.'s Compl.].) It is well established that "[a] supervisor may not be held liable under Section 1983 merely because his subordinate committed a constitutional tort," but rather may be held liable only upon an additional showing that the supervisor was personally involved in the violation; personal involvement exists, in relevant part, if the supervisor was grossly negligent in failing to supervise the subordinate in question, "provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). The Second Circuit has defined "gross negligence" as "the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). "The standard of gross negligence is satisfied where the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured;" however, "[a] supervisor is not grossly negligent . . . where the plaintiff fails to demonstrate that the supervisor knew or should have known of a problematic pattern of employee actions or where the supervisor took adequate remedial steps immediately upon learning of the challenged conduct." *Raspardo*, 770 F.3d at 117.

25

Even if the Complaint sufficiently alleged facts to plausibly suggest that Haelen was personally involved in the conduct that Plaintiff alleges constituted retaliation in violation of the First Amendment (a point that the Court need not, and does not, conclusively address), such a finding is insufficient to state a valid claim because Plaintiff still has failed to allege facts plausibly suggesting that she was engaged in protected speech, which, as discussed above, is a necessary element of a First Amendment retaliation claim.  Consequently, Plaintiff's attempt to seek alternative liability against Haelen based on his status as a supervisor is unavailing because she has not stated a claim for the underlying constitutional violation.

For all of these reasons, Defendants' motion as to this claim is granted.

### C.    Whether Plaintiff Has Stated a Claim for a Violation of Her Equal Protection Rights

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 10, Attach. 1, at 14-17 [Defs.' Mem. of Law]; Dkt. No. 16, at 3-8 [Defs.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff may allege a claim for the violation of her right to equal protection under the Fourteenth Amendment based on sex discrimination because the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985).  "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals."  *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see also Vega*, 801 F.3d at 82 (noting that "except for the issue of individual

26

liability, an 'equal protection claim parallels [a plaintiff's] Title VII claim'" for both discrimination claims and retaliation claims based on complaints or opposition to discrimination). Thus, claims for hostile work environment and disparate treatment may be brought under § 1983 as equal protection claims. *Demoret*, 451 F.3d at 149.

"To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Because Plaintiff's Equal Protection claim is based on the same discriminatory conduct as that at issue in her Title VII hostile work environment claim, and because the Court has already concluded that Plaintiff has not alleged facts plausibly suggesting that any discriminatory or hostile conduct was based specifically on her gender (or on gender-plus-familial status), the Court finds that Plaintiff's Equal Protection claim against Di Stefano and Haelen must also be dismissed to the extent that Plaintiff claims that those Defendants discriminated against her on the basis of her gender and family status. *Demoret*, 451 F.3d at 149; *Vega*, 801 F.3d at 82; *see also Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) ("To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race."). Additionally, the Court agrees with Defendants that Plaintiff's Complaint is devoid of allegations sufficiently suggesting similarly situated individuals who were treated differently. (Dkt. No. 10, Attach. 1, at 13-14 [Defs.'s Mem. of Law].)

Finally, Plaintiff alleges that Haelen is liable for a violation of the Equal Protection Clause based on his failure to train Di Stefano. However, as discussed above in Part III.B of this

27

Decision and Order, even assuming that the Complaint alleges facts plausibly suggesting Haelen's personal involvement, Plaintiff has not alleged sufficient facts to state a plausible claim against Haelen on this alternative basis.  Notably, liability for an Equal Protection Clause violation pursuant to 28 U.S.C. § 1983 requires not only personal involvement but a discriminatory purpose that "'involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group.'"  *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012).  As discussed above in Part III.A of this Decision and Order, the Complaint does not allege facts plausibly suggesting that Di Stefano, let alone Haelen, acted with a discriminatory purpose based on Plaintiff's gender or gender-plus-familial-status.  Consequently, Plaintiff's attempt to seek alternative liability against Haelen based on his status as a supervisor is unavailing.

For all of the above reasons, the Court grants Defendants' motion as to this claim.

### D.    Whether Plaintiff Has Stated a Claim for a Violation of the Substantive Due Process Clause

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 10, Attach. 1, at 21-22 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

Substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them" to "prevent government power from being used for the purposes of oppression."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  "To state a substantive due process claim, a plaintiff must allege that: (1) the complained-of state action comprised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary."  *Rother*, 970 F. Supp. 2d at 100.

28

According to the Second Circuit,

> Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious . . . . Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *see also United States v. Salerno*, 481 U.S.739, 746 (1987) (noting that substantive due process "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty"); *Obsession Sports Bar & Grill, Inc. v. City of Rochester*, 706 F. App'x 53, 53 (2d Cir. 2017) (stating that, in order to state a substantive due process claim, the plaintiff was required to show that the subject zoning regulation was "arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised"). This is a high bar to meet: "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Additionally, an employer's actions do not violate an employee's substantive due process rights "'simply because that employer is a government official,'" but rather "'only if the employer abuses some power unique to its role as a government entity.'" *Thomas v. New York City Dept. of Educ.*, 938 F. Supp. 2d 334, 353 (E.D.N.Y. 2013); *see also Santangelo v. City of New York*, 16-CV-5604, 2017 WL 4357335, at *9 (E.D.N.Y. Sept. 29, 2017) (dismissing claim for substantive due process violation where the actions complained of "were the same kinds of employment actions that any employer, whether public or private, could potentially take with respect to an employee," and therefore it was not a situation in which a government official used his unique position to impose a loss on the plaintiff). In other words, "[t]he substantive

29

component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." *McClary v. O'Hare*, 786 F. 32 83, 89 (2d Cir. 1986).

The Court need not (and does not) address whether Plaintiff had a legal property interest in receiving credit for the excessive hours she worked pursuant to the 1999 Resolution[1] because she has not alleged facts plausibly suggesting that Defendants' action in denying her this credit was sufficiently oppressive or arbitrary to constitute a violation of her substantive due process rights. Plaintiff first alleges that Defendants did not offer any rationale for "refusing to follow the 1999 Resolution," and then alleges contradictorily that "[t]hey cited a revision to the Employee Handbook" as the reason for why she was not entitled to compensatory time off for excessive hours worked. (Dkt. No. 1, at ¶ 40 [Pl.'s Compl.].) Plaintiff alleges that the 1999 Resolution (which was passed by SUCF's Board of Trustees) provided "Management Confidential employees who worked in excess of 37.5 hours per week would be entitled to credit for the excess time." (*Id.* at ¶ 31.) Plaintiff alleges that the Employee Handbook cited by Defendants, "while setting conditions to compensatory time for certain employees, did not purport to rescind the 1999 Resolution." (*Id.* at ¶ 40.) However, even if the Court assumes (as it must on a motion to dismiss) that Plaintiff is correct that the Employee Handbook did not rescind or otherwise invalidate the 1999 Resolution, Plaintiff still has not alleged facts plausibly

---

[1]    The Court notes, however, that other courts have found that a right to employment benefits has not been recognized as a fundamental right for the purposes of the Substantive Due Process Clause. *Murphy o/b/o Local 1, United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Indus. of the United States and Canada v. Olatoye*, 16-CV-10012, 2018 WL 1281817, at *4 (S.D.N.Y. Mar. 6, 2018) (citing *Piekutowski v. Twp. of Plains*, 05-CV-2078, 2006 WL 3254536, at *8 [M.D. Pa. Nov. 9, 2006]).

suggesting that Defendants' action was conscience-shocking, interfered with rights implicit in the concept of ordered liberty, or so outrageously arbitrary as to constitute a gross abuse of governmental authority.  As the case law makes clear, conduct that is merely arbitrary or capricious is not sufficient to state a claim for a violation of substantive due process.  *Salerno*, 481 U.S. at 746; *Obsession Sports Bar & Grill, Inc.*, 706 F. App'x at 53; *Natale*, 170 F.3d at 263.  Plaintiff has failed to allege facts plausibly suggesting that Defendants' conduct rose above being merely arbitrary or capricious, and therefore she has failed to state a claim upon which relief can be granted.

Finally, because the 1999 Resolution was an internal workplace policy regarding benefits that Plaintiff does not allege were mandated by law, it does not appear plausible that a failure to follow such internal policy would constitute a violation of substantive due process.  The fact that this internal policy was enacted by the Board of Trustees of a state entity does not mean that it implicates a constitutional right, given that denial under a similar non-mandated internal policy from a private employer would not provide a private employee with a constitutional remedy. Plaintiff has not alleged facts suggesting why the 1999 Resolution would implicate constitutional rights beyond the fact that her employer is a governmental entity.

For all of the above reasons, the Court finds that Defendants' motion should be granted as to Plaintiff's substantive due process claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 10) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** such that the following claims are **<u>DISMISSED</u>**:

(1)    Plaintiff's First Claim for hostile work environment discrimination pursuant to Title VII;

(2)     Plaintiff's Third Claim for a violation of the Equal Protection Clause of the

Fourteenth Amendment pursuant to 28 U.S.C. § 1983;

(3)     Plaintiff's Fourth Claim for retaliation pursuant to the 28 U.S.C. § 1983 and the

First Amendment;

(4)     Plaintiff's Fifth Claim for a violation of the Substantive Due Process Clause of

the Fourteenth Amendment pursuant to 28 U.S.C. § 1983; and

(5)     Plaintiff's Sixth Claim for hostile work environment discrimination pursuant to

N.Y. Exec. L. § 296 based on her gender; and it is further

**ORDERED** that **SURVIVING** this motion to dismiss are the following claims:

(1)     Plaintiff's Second Claim for retaliation pursuant to Title VII;

(2)     Plaintiff's Sixth Claim for hostile work environment discrimination pursuant to

N.Y. Exec. L. § 296 based on her familial status; and

(3)     Plaintiff's Seventh Claim for retaliation pursuant to N.Y. Exec. L. § 296; and it is

further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of

the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(A), and this case is

referred back to Magistrate Judge Hummel for the setting of pretrial scheduling deadlines.

Dated: June 21, 2018
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge