UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERESE MEAGHER,

                          Plaintiff,

v.                                                          1:17-CV-0903
                                                            (GTS/CFH)
STATE UNIVERSITY CONSTRUCTION FUND;
ROBERT HAELEN, in his official and individual
capacity; and JOANNE Di STEFANO, in her
official and individual capacity,

                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

TABNER, RYAN & KENIRY, LLP                      THOMAS R. FALLATI, ESQ.
   Counsel for Plaintiff
18 Corporate Woods Boulevard
Albany, NY 12211

HON. LETITIA JAMES                              BRIAN W. MATULA, ESQ.
Attorney General for the State of New York      Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224

GIRVIN & FERLAZZO, P.C.                         PATRICK J. FITZGERALD III, ESQ.
   Co-Counsel for Defendants
20 Corporate Woods Boulevard
Albany, NY 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

         Currently before the Court, in this employment discrimination action filed by Terese

Meagher ("Plaintiff") against the State University Construction Fund ("Fund"), Robert Haelen,

and Joanne Di Stefano ("Defendants"), is Defendants' motion for summary judgment.  (Dkt. No.

59.)  For the reasons set forth below, Defendants' motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Second Amended Complaint

Generally, in her Second Amended Complaint, Plaintiff asserts the following seven claims against all Defendants (unless otherwise indicated): (1) a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a claim for retaliation in violation of Title VII; (3) a claim that Defendants Haelen and Di Stefano violated her right to equal protection pursuant to the Fourteenth Amendment of the United States Constitution and 28 U.S.C. § 1983; (4) a claim that Defendants Haelen and Di Stefano retaliated against her in violation of the First Amendment of the United States Constitution and 28 U.S.C. § 1983; (5) a claim that Defendants Haelen and Di Stefano violated her substantive due process rights pursuant to the Fourteenth Amendment of the United States Constitution and 28 U.S.C. § 1983; (6) a claim for gender and familial status discrimination in violation of the New York State Human Rights Law ("NYSHRL"); and (7) a claim for retaliation in violation of the NYSHRL.[1]  (Dkt. No. 42 [Pl.'s Compl.].)

As a result of the Court's Decision and Order of June 21, 2018, only the following claims survive at the time of this motion for summary judgment: (1) Plaintiff's claim for retaliation pursuant to Title VII; (2) Plaintiff's claim for discrimination/hostile work environment pursuant to the NYSHRL based on her familial status; and (3) Plaintiff's claim for retaliation pursuant to the NYSHRL.  (Dkt. No. 17 [Decision and Order filed June 21, 2018].)

---

[1]      As Plaintiff acknowledges in her Second Amended Complaint, the first, third, fourth, fifth, and sixth of these claims were dismissed by the Court in its Decision and Order of June 21, 2018.

**B.      Undisputed Material Facts on Defendants' Motion for Summary Judgment**

The following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and either expressly admitted by Plaintiff or denied without appropriate record citations in her response thereto.  (*Compare* Dkt. No. 59, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Resp.].)

1.      The Fund is a New York public benefit corporation which oversees the construction of projects for the State University of New York system.

2.      Plaintiff was hired in June 2009 as an Associate Counsel in the Fund's legal department.

3.      Plaintiff's primary job responsibilities were advising the Fund regarding legal issues, particularly those involving construction contracts and insurance, and handling pending and threatened litigation involving the Fund, which included assisting the New York State Attorney General's office.

4.      Bill Barczak, the Fund Counsel at the time Plaintiff was hired, was Plaintiff's direct supervisor and was the only other attorney in the Fund's legal department from the time Plaintiff was hired until his retirement in March 2015.

5.      Shortly after becoming employed by the Fund, Plaintiff went on maternity leave from July to November 2009 for the birth of her first child.

6.      After her maternity leave, Plaintiff returned to the Fund part-time, working an 80% schedule until November 2011.

7.      In November 2011, Mr. Barczak told Plaintiff that she would need to work full-time to be considered for advancement, and Plaintiff accordingly began working full-time.

8.     With Mr. Barczak's retirement in March 2015, Plaintiff became the only attorney in the Fund's legal department, but retained the title of Associate Counsel.

9.     After Mr. Barczak retired, Plaintiff was appointed to his former role as Secretary of the Fund's Board of Trustees.

10.    When Mr. Barczak retired, he told Defendant Haelen that Plaintiff should not be promoted to his position as Fund Counsel because she was not ready for that role.[2]

11.    After Mr. Barczak retired, Plaintiff struggled to keep up with the workload.

12.    After Mr. Barczak retired, the legal department fell behind on its work, and Defendant Haelen received complaints from the legal department's constituents about the legal department taking too long to complete tasks.[3]

---

[2]     Plaintiff argues that this statement is inadmissible hearsay and thus should not be admitted.  (Dkt. No. 66, at ¶ 10 [Pl.'s Rule 7.1 Resp.].)  However, because it is not apparent that this evidence could not be presented in a form admissible at trial, the Court declines to exclude this evidence for the purposed of Defendants' motion for summary judgment.  *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (finding that the Court did not need to review whether the relevant evidence met one of the hearsay exceptions because "material relied on at summary judgment need not be admissible in the form presented to the district court.  Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment'") (quoting *Santos v. Murdock*, 243 F.3d 681, 683 [2d Cir. 2001]).  For example, setting aside whether the statement is offered for the truth of the matter asserted for the purposes of Fed. R. Evid. 801(c)(2) or merely the effect on the listener, the Court has no reason to believe that Mr. Barczak would not be available to testify at trial.

[3]     Plaintiff again argues that this statement involves inadmissible hearsay.  (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  As an initial matter, the Court is not convinced that this statement would be inadmissible hearsay if it is presented to establish merely that Defendant Haelen received such complaints, rather than to establish that the legal department was indeed taking too long to complete tasks.  *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: [1] the declarant does not make while testifying at the current trial or hearing; and [2] a party offers in evidence to prove the truth of the matter asserted in the statement.").  Additionally, as discussed above in note 2 of this Decision and Order, it is not apparent that this evidence could not be presented in a form admissible at trial.  *Smith*, 697 F. App'x at 89.  For example, the Court has no reason to believe that none of the legal department's constituents would be available to

13.    In the summer of 2015, Plaintiff initiated a conversation with Defendant Haelen to discuss her difficulties with her workload.

14.    In this conversation, Plaintiff stated that she wanted to spend more time with her children and that her workload was interfering with this goal.

15.    In this conversation, Defendant Haelen told Plaintiff that he would confer with the human resources department regarding providing the legal department with staffing to help reduce Plaintiff's workload.

16.    Mary Jo Lais, the Fund's Director of Human Resources, also had conversations with Plaintiff during the summer of 2015 regarding the legal department's workload.

17.    On August 7, 2015, Defendant Haelen informed Plaintiff that he had selected Defendant Di Stefano (the Fund's Corporate Integrity and Ethics Officer) to join the legal department as Deputy Counsel, and that Plaintiff would not be promoted.

18.    Defendant Haelen also advised Plaintiff that Defendant Di Stefano would be taking over the role of Secretary for the Board of Trustees.

19.    Plaintiff responded that, due to the hiring of Defendant Di Stefano, she wished to return to an 80% schedule.

20.    Defendant Haelen explained to Plaintiff that he would have to consult with Defendant Di Stefano about her request for a part-time schedule.

21.    Plaintiff reiterated that her current workload was too burdensome.

22.    Defendant Haelen acknowledged Plaintiff's concern and reassured her that he did not want her to "burn out."

───────────────────────────

testify at trial, or that none of these complaints survive in written form.

23.     Defendant Haelen explained that adding Defendant Di Stefano to the legal department would serve to reduce Plaintiff's workload and enable Plaintiff to focus more exclusively on litigation.

24.     In her new role as Deputy Counsel of the legal department, Defendant Di Stefano was tasked by Defendant Haelen with addressing the department's backlog of work.

25.     At various times, different employees at the Fund have had different authorizations to sign documents on behalf of the Fund.  Between Mr. Barczak's retirement in March 2015 and Defendant Di Stefano's appointment to the role of Deputy Counsel in August 2015, Plaintiff was the only attorney in the Fund's legal department and thus was given greater signatory authority after Mr. Barczak's retirement.  That signatory authority was later reduced after Defendant Di Stefano became Deputy Counsel.[4]

26.     In her role as Deputy Counsel in the legal department, Defendant Di Stefano became Plaintiff's direct supervisor.

27.     In her role as Deputy Counsel in the legal department, Defendant Di Stefano was given the authority to assign and review Plaintiff's work.

28.     In her role as Deputy Counsel in the legal department, Defendant Di Stefano had no ownership interest in the Fund and lacked any authority to hire or fire Fund employees.[5]

---

[4]     The Court finds that portions of Defendants' asserted fact are properly disputed by Plaintiff's denial.  (*Compare* Dkt. No. 59, Attach. 1, at ¶ 26 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66, at ¶ 26 [Pl.'s Rule 7.1 Resp.].)  The Court has reformulated the asserted fact to reflect the undisputed facts that could be gleaned from the evidence cited by Defendants and Plaintiff.

[5]     Plaintiff objects to this asserted fact, arguing that it sets forth a legal conclusion rather than a factual assertion.  (Dkt. No. 66, at ¶ 29 [Pl.'s Rule 7.1 Resp.].)  However, whether Defendant Di Stefano had an ownership interest or the authority to hire and fire employees are

29.     Plaintiff had conversations with Defendant Di Stefano shortly after Defendant Di Stefano became Deputy Counsel regarding Plaintiff's ongoing struggles with her current workload.

30.     In these conversations, Plaintiff noted that she had frequently been working on nights and weekends and expressed her desire for a decreased workload that would enable her to spend more time with her family.

31.     In one of these conversations, Plaintiff complained about a recent instance in which she had done work at home on a weekend after her children had gone to bed.

32.     In these conversations, Defendant Di Stefano assured Plaintiff that she would help alleviate Plaintiff's workload by taking on some of the responsibilities that Plaintiff had been handling.

33.     Defendant Di Stefano personally took on much of the legal department's day-to-day transactional work.

34.     Defendant Di Stefano frequently spent in excess of 70 hours per week (including nights and weekends) on her responsibilities to the Fund.

35.     In another meeting with Defendant Di Stefano in November 2015, Plaintiff again expressed her desire to work fewer hours.

36.     Plaintiff also reiterated a request she had made to Defendant Haelen in July 2015 for compensatory time off for "excess" work hours.

---

clearly factual issues that can be proven or disproven by evidence.  Defendants have cited evidence supporting the asserted fact, while Plaintiff has not adduced evidence to establish a genuine dispute of material fact regarding Defendant Di Stefano's ownership interest or authority to hire and fire employees.  As a result, this asserted fact is deemed admitted.

37.     Following the meeting on November 10, 2015, Defendant Di Stefano conferred with the Fund's human resources department and determined that Plaintiff was not entitled to compensatory time under the Fund's then-current policies.

38.     On December 7, 2015, Defendant Di Stefano and Ms. Lais met with Plaintiff to confirm that she was not entitled to receive compensatory time.

39.     Plaintiff approached Defendant Di Stefano on December 23, 2015, with a new proposal for reducing her work hours.

40.     On December 23, 2015, Plaintiff asked Defendant Di Stefano for approval of a part-time work schedule consisting of two hours off every other Tuesday plus a full day off every other Thursday, and noted that she wanted to spend this time with her children.

41.     On January 7, 2016, Defendant Di Stefano asked Plaintiff for a workload analysis to enable her to evaluate Plaintiff's request for a part-time schedule.

42.     On January 11, 2016, Plaintiff gave Defendant Di Stefano a handwritten page containing notations related to tasks for various matters being handled by the legal department.

43.     This page did not include any details such as deadlines or estimates of the amount of time Plaintiff would need to complete the listed tasks.

44.     Upon receiving this page, Defendant Di Stefano was greatly frustrated because it lacked the critical details that she felt were necessary for her to gain a meaningful understanding of Plaintiff's current workload.

45.     Defendant Di Stefano also felt that the page showed very little effort on Plaintiff's part to provide the information Defendant Di Stefano had requested.

46.     Defendant Di Stefano emailed Plaintiff that same day, requesting a more thorough

analysis, including more detailed project descriptions, timeframes for completion of projects, and deadlines.

47.     Defendant Di Stefano believed at that time that Plaintiff's submission of January 11, 2016, reflected Plaintiff's disinterest in collaborating with her to find a solution for the workload problem.

48.     In a meeting on January 28, 2016, after Plaintiff had returned from a vacation, Defendant Di Stefano remarked that she was "personally and professionally offended" by Plaintiff's submission.

49.     Plaintiff protested that she had spent a lot of time trying to prepare the workload analysis.

50.     Plaintiff offered to provide Defendant Di Stefano with copies of her timesheets and a litigation log of pending lawsuits, but Defendant Di Stefano stated that these items were not helpful to gain a full understanding of Plaintiff's current workload.[6]

51.     On February 3, 2016, during a meeting with Plaintiff, Defendant Di Stefano reiterated that she still wanted a thorough written workload analysis.

52.     Plaintiff requested a template to guide her in preparing an analysis of her workload.

53.     Defendant Di Stefano responded that she did not have a template for Plaintiff to

---

[6]     Plaintiff denies this asserted fact, but the evidence that she cites in opposition does not dispute the fact that Defendant Di Stefano told Plaintiff that the proffered documents would not be helpful.  (Dkt. No. 66, at ¶ 54 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

use, but she reiterated what information she wanted included in the analysis.[7]

54.     As of early 2016, the legal department's constituents, including the Attorney

General's office and other Fund personnel who relied on the legal department for advice and

support, were continuing to express dissatisfaction with Plaintiff.[8]

55.     At some point around January 2016, Defendant Di Stefano (without Plaintiff) met

with Bruce Feldman, an attorney from the Attorney General's office, to discuss issues relating to

their offices' joint handling of litigation.[9]

56.     Mr. Feldman raised serious concerns about Plaintiff's involvement in lawsuits in

---

[7]     Plaintiff denies this asserted fact, but the evidence she cites in opposition does not
dispute the fact that Defendant Di Stefano did not have a format to give Plaintiff.  (Dkt. No. 66,
at ¶ 54 [Pl.'s Rule 7.1 Resp.].)  In her affidavit, Plaintiff states that Defendant Di Stefano
specifically said, "I won't even comment on that," in response to her request for a format, but
Plaintiff's notes (to which she refers in the cited paragraph of her affidavit) indeed state that "JD
said she does not have a format."  (Dkt. No. 59, Attach. 31, at 3.)  The Court finds nothing in
Plaintiff's purported denial that actually denies the asserted fact and thus the asserted fact is
deemed admitted.

[8]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt.
No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  As discussed in note 3 of this Decision and Order, these
statements would not be hearsay if they were offered to establish that complaints were made
about Plaintiff's performance, rather than to establish the truth of the substance of those
complaints.  Alternatively, the Court has no reason to believe that the complainants would be
unavailable to testify at trial.  As a result, the Court finds that it may consider this evidence on
this motion for summary judgment.

[9]     Plaintiff denies this asserted fact, but she fails to cite admissible evidence to
support her denial.  (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  In Plaintiff's own deposition,
she testified that her "understanding of the meeting was to discuss with the Office of Attorney
General the handling of Fund litigation by the AG's Office."  (Dkt. No. 59, Attach. 4, at 95 [Pl.'s
Dep.].)  The Court also rejects Plaintiff's assertion that this asserted fact contains hearsay.  This
asserted fact is therefore deemed admitted.

which the Attorney General's office was representing the Fund.[10]

57.     Mr. Feldman complained that, among other things, Plaintiff was requesting excessive extensions, was uncooperative with the Attorney General's office in handling cases, and was not timely in responding to issues.[11]

58.     Due to these concerns, Mr. Feldman conveyed that the Attorney General's office no longer wanted to work with Plaintiff.[12]

59.     Pursuant to her meeting with Mr. Feldman, as well as other previous and subsequent requests by the Attorney General's office for her personal assistance with litigation matters, Defendant Di Stefano began taking a more active role in the department's litigation work.[13]

60.     Defendant Di Stefano became involved with a lawsuit entitled *Sano-Rubin* at the specific request of the Attorney General's office after Mr. Feldman expressed displeasure with

---

[10]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  The Court rejects this argument for the reasons discussed in note 8 of this Decision and Order.

[11]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  The Court rejects this argument for the reasons discussed in note 8 of this Decision and Order.

[12]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  As discussed above in note 2 of this Decision and Order, it is not apparent that this evidence could not be presented in a form admissible at trial.  *Smith*, 697 F. App'x at 89.

[13]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  The Court rejects this argument for the reasons discussed in note 8 of this Decision and Order.  Additionally, as discussed above in note 2 of this Decision and Order, it is not apparent that this evidence could not be presented in a form admissible at trial.  *Smith*, 697 F. App'x at 89.

Plaintiff's unwillingness to prioritize a time-sensitive task.[14]

61.     During a meeting with Plaintiff on February 9, 2016, Defendant Di Stefano remarked on the legal department's ongoing backlog of time-sensitive work and reiterated her continuing need for a workload analysis so that she could consider Plaintiff's request for a part-time schedule.[15]

62.     As of February 9, 2016, Plaintiff had still not prepared a workload analysis that was satisfactory to Defendant Di Stefano.

63.     In response to Defendant Di Stefano's statement that she was still determining whether Plaintiff could be switched to a part-time schedule that permitted Plaintiff to take time off on Tuesdays and Thursdays as she had requested, Plaintiff indicated that she wanted to spend more time with her children in the immediate future because her younger daughter was starting school that fall.

64.     Defendant Di Stefano responded by observing that she was herself working extremely long hours to the detriment of her personal and family time due to the department's very heavy workload.

---

[14]     Plaintiff again argues that this statement involves inadmissible hearsay.   (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)   The Court rejects this argument for the reasons discussed in note 8 of this Decision and Order.   Additionally, as discussed above in note 2 of this Decision and Order, it is not apparent that this evidence could not be presented in a form admissible at trial.  *Smith*, 697 F. App'x at 89.

[15]     Plaintiff denies the asserted fact, arguing that the "backlog" was not of her own litigation work.  (Dkt. No. 66, at ¶ 67 [Pl.'s Rule 7.1 Resp.].)   However, the asserted fact specifically refers to "the department's" backlog, not merely Plaintiff's litigation work, and Plaintiff cites no evidence to establish that the department as a whole did not have a backlog. (Dkt. No. 59, Attach. 1, at ¶ 67 [Defs.' Rule 7.1 Statement].)   This fact is therefore deemed admitted.

65.     At other times during conversations with Plaintiff, Defendant Di Stefano discussed the difficulties of balancing work demands and parenthood, and mentioned that at one time she had taken a less demanding, lower-paying job to be able to spend more time with her daughter.  In making these statements, Defendant Di Stefano felt that she was being empathetic to Plaintiff based on her own personal experiences in her career.[16]

66.     As a result of the meeting of February 9, 2016, Defendant Di Stefano repeated her request for a detailed workload analysis, which she now asked Plaintiff to complete by February 19, 2016.

67.     On February 12, 2016, Defendant Di Stefano (without Plaintiff) attended a meeting on a lawsuit entitled *Christa v. Fund*.

68.     When Plaintiff and Defendant Di Stefano met again on February 16, 2016, Plaintiff presented a log of her workload.

69.     Defendant Di Stefano noted that the log (although appreciably more detailed than Plaintiff's previous submission) still did not include the time estimates she had requested; she asked Plaintiff to add this information.

70.     In mid-February 2016, Defendant Di Stefano directed Plaintiff to complete a litigation analysis for Defendant Haelen so that he could evaluate several important lawsuits involving the Fund, and she set a deadline of February 26, 2016, for Plaintiff to complete that analysis.

---

[16]     Plaintiff denies this asserted fact.  (Dkt. No. 66, at ¶ 71 [Pl.'s Rule 7.1 Resp.].) However, Plaintiff does not cite any evidence to support her denial of the portion of the fact related to Defendant Di Stefano's feelings or motivations, and the Court does not feel that Defendants' characterization of Defendant Di Stefano's words is inaccurate or misleading.  This asserted fact is therefore deemed admitted.

71.     Defendant Di Stefano and Plaintiff both attended a meeting with other Fund staff regarding the *Christa* case on February 29, 2016.

72.     Defendant Di Stefano felt that Plaintiff had been grossly unprepared for the meeting, and subsequently expressed concern about Plaintiff's lack of preparation.[17]

73.     Meanwhile, also on February 29, 2016, Plaintiff received an email from a SUNY attorney complaining about a default judgment that had been entered in a lawsuit entitled *Green Depot v. SUNY* after the Fund's failure to answer the complaint in that case.[18]

74.     Plaintiff told Defendant Di Stefano that, due to other work, she could not address *Green Depot* immediately, so Defendant Di Stefano took the *Green Depot* file to handle the issue herself.

75.     On March 7, 2016, Defendant Haelen extended a written apology to SUNY for "how poorly the Green Depot matter was handled by the Fund."

76.     As of February 29, 2016, Plaintiff had not completed the litigation analysis which had been due on February 26, 2016.

77.     During a meeting on March 1, 2016, Defendant Di Stefano further commented on Plaintiff's performance at the February 29 meeting, stating that she felt that Plaintiff was not

---

[17]     Plaintiff denies this asserted fact, but provides no evidence that would create a genuine dispute of material fact as to whether this was indeed what Defendant Di Stefano felt. (Dkt. No. 66, at ¶ 78 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

[18]     Plaintiff denies this asserted fact, but her denial is based entirely on a denial of the implied fact that the Fund was responsible for answering the complaint in that matter.  (Dkt. No. 66, at ¶ 78 [Pl.'s Rule 7.1 Resp.].)  *See also Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).  However, Plaintiff has not denied the actual asserted fact, and thus that fact is deemed admitted.

efficient in how she approached her workload and assignments.

78.     Defendant Di Stafano asked Plaintiff to make an effort to complete more tasks more efficiently.

79.     Defendant Di Stefano advised that, in light of the legal department's demanding workload, Plaintiff might have to work long hours, including nights and weekends on an as-needed basis, just as Defendant Di Stefano had been doing.

80.     Plaintiff protested that Defendant Di Stefano had already approved her request for a part-time schedule.

81.     Defendant Di Stefano stated that she had not approved a part-time schedule as requested by Plaintiff because she did not have the information she felt that she needed to determine if a part-time schedule was compatible with the legal department's obligations.

82.     At this point in the meeting, Plaintiff began crying and looked away.

83.     Defendant Di Stefano responded by leaning towards Plaintiff from the opposite side of the conference room table and asking Plaintiff to look at her so that she could confirm that Plaintiff had heard her.[19]

84.     Defendant Di Stefano followed up on this strained meeting by sending emails to all of the legal department's employees on March 2 and March 5, 2016, indicating that those employees were required to make advance written requests for time off for the purposes of accountability and to ensure that Fund staff could be reached if needed.

85.     Defendant Di Stefano granted Plaintiff's request to take a day off on Thursday,

---

[19]     Plaintiff disputes that the purpose of Defendant Di Stefano's actions was to confirm that Plaintiff understood her, but Plaintiff cites no evidence to support that denial.  (Dkt. No. 66, at ¶ 78 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

March 3, 2016, but asked Plaintiff to cover a meeting on Tuesday, March 8, 2016.

86.     When Plaintiff indicated that she did not have childcare arranged for March 8 because she had planned to take time off that morning, Defendant Di Stefano approved Plaintiff's request for time off on that date.

87.     On March 5, 2016, Defendant Di Stefano assigned Plaintiff an insurance procedure drafting project and set a deadline of March 14, 2016, for its completion.

88.     On March 7, 2016, Defendant Di Stefano asked Plaintiff to complete the litigation analysis assignment for Defendant Haelen by March 14, 2016; that analysis had initially been due by February 26, 2016, but had not been completed.

89.     On March 8, 2016, Plaintiff informed Defendant Di Stefano that she "[did] not expect to meet" the March 14 deadline for the insurance project assignment.

90.     On the evening of Friday, March 11, Plaintiff then requested an extension of the March 14 deadline for the litigation analysis assignment, stating that she could not work on it that weekend because her daughter had a birthday celebration that would span the entire weekend.

91.     Defendant Di Stefano replied that they should meet on the morning of Monday, March 14 to discuss the deadline extension.

92.     Defendant Di Stefano was unable to make that meeting on time, but thereafter asked Plaintiff to give her what Plaintiff had so far on the litigation assignment and her workload log.[20]

93.     On March 14, 2016, Plaintiff sent a series of emails from her work email address

---

[20]     The Court notes that Defendants' assertion that Defendant Di Stefano "advised Plaintiff to keep working on the project" does not appear to be supported by the evidence cited by Defendants.  (Dkt. No. 59, Attach. 1, at ¶ 98 [Defs.' Rule 7.1 Statement].)

to her personal email address containing successive drafts of a journal which chronicled her experience at the Fund.

94.   On the morning of March 14, 2016, Defendant Di Stefano commented that Plaintiff had not proposed an alternative deadline by which she would have the litigation assignment completed, informed Plaintiff that she would be reviewing the assignment before giving the materials to Defendant Haelen, expressed concern whether there would be adequate time to review the assignment before a Thursday meeting, and asked Plaintiff to print an update "of where you are with the litigation analysis assignment as soon as possible."

95.   Plaintiff emailed Defendant Di Stefano a draft of only one of the three case analyses that had been assigned to her.

96.   Later that day, Defendant Di Stefano asked Plaintiff to attend a quarterly meeting with other State agencies that Defendant Di Stefano was unable to attend.  Plaintiff did not attend and instead asked Defendant Di Stefano by email whether she could "take this off my calendar due to workload" because another Fund employee (who was not part of the legal department) was attending the meeting; Defendant Di Stefano did not see this email until after the meeting had already taken place.[21]

97.   In January, February, and March 2016, Defendant Di Stefano continued to receive complaints from constituents about Plaintiff's failures to complete tasks in a timely manner.[22]

---

[21]   Plaintiff disputes the asserted fact, but her denial is merely an attempt to state additional disputed facts, which more properly belong in a Statement of Additional Material Facts that she contends are in dispute pursuant to Local Rule 7.1(a)(3).  (Dkt. No. 66, at ¶ 102 [Pl.'s Rule 7.1 Resp.].)  This asserted fact is therefore deemed admitted.

[22]   Plaintiff again argues that this statement involves inadmissible hearsay.  (Dkt. No. 66, at ¶ 12 [Pl.'s Rule 7.1 Resp.].)  The Court rejects this argument for the reasons discussed in

98.     As of early March 2016, Defendant Di Stefano and Ms. Lais were having discussions regarding their options for addressing the alleged issues with Plaintiff's performance, including the preparation of a performance improvement plan ("PIP").

99.     It was decided that a PIP would be prepared for Plaintiff.

100.    Ms. Lais emailed Defendant Di Stefano a rough draft of the PIP on March 8, 2016, that reflected their previous discussions.

101.    Defendant Di Stefano added more detailed descriptions to the PIP throughout the month of March.

102.    Defendant Di Stefano's March 29, 2016, version of the draft PIP set forth numerous issues with Plaintiff's performance.

103.    Plaintiff and Defendant Di Stefano met again on March 16, 2016.

104.    Defendant Di Stefano expressed her frustration with Plaintiff's tardiness as to the completion of work assignments and the substance of Plaintiff's work product on the litigation analysis project.

105.    Defendant Di Stefano also advised Plaintiff at that meeting that she could not grant Plaintiff's request for a part-time schedule in the face of the legal department's workload and its need to meet its obligations.

106.    When Plaintiff asked whether she was expected to work nights and weekends, Defendant Di Stefano responded that Plaintiff's responsibilities could sometimes require that, and stressed that Plaintiff needed to find a way to get her work done.

107.    Plaintiff met with Defendant Haelen on March 17, 2016, and discussed her

---

note 8 of this Decision and Order.

18

difficulties working with Defendant Di Stefano.

108.    Defendant Haelen advised Plaintiff that he agreed with Defendant Di Stefano that Plaintiff's responsiveness and handling of her workload were not up to par and that Plaintiff needed to become more efficient.

109.    Defendant Haelen noted that struggles with balancing work and family time were part of the nature of fast-paced jobs, and he shared that he, as a parent himself, had sometimes had to sacrifice parenting time for work.

110.    On March 18, 2016, Plaintiff left a voicemail for Ms. Lais in which she stated that she felt "the need to make a complaint on the anti-bullying policy."

111.    Plaintiff confirmed at her deposition that she had referenced the Fund's "Bullying in the Workplace" policy when she made her complaint to Ms. Lais.

112.    Plaintiff also testified that she was specifically aware of the "Bullying in the Workplace" policy due to an update sent out by the human resources department around December 2015 when the policy was added to the Fund's Employee Handbook.

113.    The Employee Handbook also includes an anti-discrimination policy that is separate from the "Bullying in the Workplace" policy.

114.    Ms. Lais responded to Plaintiff's voicemail by sending an email to Plaintiff on March 18, 2016.

115.    Ms. Lais' email confirmed receipt of Plaintiff's voicemail and invited Plaintiff to schedule a time for them to discuss the complaint.

116.    Ms. Lais' email also notified Plaintiff that Ms. Lais, Defendant Di Stefano, and Defendant Haelen had been developing a PIP "for the past several weeks" based on "on-going

19

discussions for the past several months regarding [her] performance."

117.    Ms. Lais assured Plaintiff that there would be a separate meeting to discuss the

PIP and the issues raised therein.

118.    On March 21, 2016, after a senior staff meeting during which Defendant Di

Stefano had been unaware of certain communications between Plaintiff and another Fund

employee related to contract changes, Defendant Di Stefano directed Plaintiff that "[p]er

previous discussions, please send me an email or copy/forward to me emails regarding your

dealings with staff on various matters or when approached for new work/questions so that we

keep on the same page and don't work at cross purposes in providing advice to the Fund."

119.    Plaintiff and Ms. Lais met on March 30, 2016, to discuss Plaintiff's bullying

complaint.

120.    Ms. Lais advised Plaintiff that the PIP would not be implemented until Plaintiff's

complaint had been addressed.

121.    Ultimately, the PIP was never implemented because Plaintiff went on medical

leave before Ms. Lais finished investigating her complaint.

122.    During their meeting on March 30, 2016, Plaintiff presented Ms. Lais with an

eight-page document that chronicled various interactions between herself, Defendant Di Stefano,

and Defendant Haelen.

123.    During their meeting on March 30, 2016, Plaintiff explained to Ms. Lais that the

document set forth the basis for her bullying complaint against Defendant Di Stefano.

124.    Pursuant to a Board resolution drafted by Defendant Haelen's staff on or prior to

March 17, 2016, Defendant Di Stefano was appointed as the Secretary of the Fund's Board of

20

Trustees in April 2016 at its first meeting following Defendant Di Stefano's appointment as Deputy Counsel.

125.    In her deposition, Plaintiff admitted that she was excluded from some meetings before she made her complaint.

126.    After she made her complaint, Plaintiff continued to be included in some meetings, but not others.

127.    In her deposition, Plaintiff admitted that some of her responsibilities were taken before she made her bullying complaint to Ms. Lais.

128.    Throughout the spring of 2016, Plaintiff remained involved in a variety of litigation and non-litigation matters, and Defendant Di Stefano continued to solicit input and participation from Plaintiff.

129.    As of June 2016, Plaintiff had enough work remaining that she was still struggling to juggle competing projects.

130.    In her deposition, Plaintiff could not identify any requests for time off (other than her longstanding request for a part-time schedule) that Defendant Di Stefano had denied.

131.    In mid-June 2016, Defendant Di Stefano approved a request from Plaintiff to take a week off for a family vacation.

132.    Ms. Lais completed her investigation of Plaintiff's complaint on June 20, 2016.

133.    Ms. Lais' investigation report found insufficient evidence to establish bullying by Defendant Di Stefano, but acknowledged the existence of a "dysfunctional work environment" and a "lack of communication and cooperation" between Plaintiff and Defendant Di Stefano.

134.    The last day on which Plaintiff reported to work at the Fund was June 17, 2016.

135.    On June 17, 2016, Plaintiff left work early and later notified Ms. Lais that she was taking medical leave.

136.    Plaintiff never returned to work, and she remained on medical leave for more than two years.

137.    Plaintiff received sick leave benefits during her medical leave.

138.    Plaintiff provided the Fund with successive doctor's notes indicating that she was unable to work.

139.    The Fund eventually terminated Plaintiff in October 2018 (after she had been out on medical leave for more than two years with no anticipated date for her to return to work) so that it could hire another candidate to fill her position.

140.    Every member of the legal department throughout the time period relevant to this litigation was a parent, including Plaintiff, Defendant Di Stefano, and the department's two non-attorney administrative staff employees.

### C.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law

Generally, in their motion for summary judgment, Defendants makes seven arguments. (Dkt. No. 59, Attach. 2 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff did not engage in any protected activity for the purposes of her Title VII retaliation claim.  (*Id.* at 20-22.) More specifically, Defendants argue that Plaintiff could not have had an objectively reasonable belief that she was reporting gender discrimination because there is no admissible evidence of any comments suggestive of gender-based discrimination, and because Plaintiff specifically brought her complaint pursuant to the Fund's anti-bullying policy (rather than the Fund's anti-

discrimination policy) and did not reference anything about that bullying conduct being motivated by her gender.  (*Id.*)

Second, Defendants argue that Plaintiff did not put Defendants on notice that she was making a discrimination complaint.  (*Id.* at 22-23.)  More specifically, Defendants argue that Plaintiff never identified any relationship between Defendant Di Stefano's conduct towards her and her gender, and thus there was no basis for Defendants to construe her complaint as raising an issue of discrimination.  (*Id.*)

Third, Defendants argue that Plaintiff has not shown that she was retaliated against for her complaint.  (*Id.* at 23-27.)  More specifically, Defendants argue that Plaintiff has not shown that she suffered any adverse action because the actions she complains of are either not supported by the evidence or are not sufficiently serious to qualify as an adverse action.  (*Id.* at 23-24.)  Defendants also argue that Plaintiff has not shown that her complaint was the but-for cause of any of the actions taken against her because some of these actions had also occurred before she made her complaint or were a mere continuation of policies or decisions made before she made her complaint (such as excluding her from certain meetings, taking work from her, declining to grant her an ongoing part-time work schedule, having her keep them apprised of her workload, and preparing the PIP).  (*Id*. at 24-27.)

Fourth, Defendants argue that, if the Court grants summary judgment and dismisses Plaintiff's Title VII claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims because those claims involve state-law matters.  (*Id.* at 27.)

Fifth, Defendants argue that Plaintiff's retaliation claims under the NYSHRL should be dismissed for substantially the same reasons as her Title VII claim should be dismissed because

she has not adduced evidence to support her claim that she complained about discrimination based on either gender or familial status, much less that a retaliatory action was taken against her based on such discrimination.  (*Id*. at 27-28.)

Sixth, Defendants argue that, as to her discrimination claim pursuant to the NYSHRL, Plaintiff has failed to establish that she was discriminated against based on her familial status. (*Id.* at 28-37.)  More specifically, Defendants argue as follows: (a) any actions taken by Defendants before January 19, 2016, cannot be considered because that is the date on which the amendment of the NYSHRL adding "familial status" as a protected class became effective; (b) the NYSHRL explicitly does not require an employer to provide accommodations based on familial status including those related to "an individual's particular needs relative to childrearing," but merely must not discriminate against a parent specifically based on their status as a parent, and thus Plaintiff's argument that Defendants denied her a part-time shift to spend more time with her children cannot establish a claim for familial status discrimination; (c) it is not clear that the NYSHRL amendments related to familial status allow for hostile work environment claims; (d) even if a hostile work environment claim can be brought, the conduct Plaintiff has shown does not rise to level of a hostile work environment; (e) Plaintiff has also not shown that the alleged hostile conduct was causally related to her status as a parent, particularly because there is ample evidence that Plaintiff had demonstrated problems managing her workload and dealing with her work efficiently and effectively; and (f) there is no evidence that Defendants raised the issue of Plaintiff's familial status, but rather it was Plaintiff who brought up her children and her desires as a parent, and there is no evidence that Defendants treated childless employees different than employees with children.  (*Id.*)

24

Seventh, Defendants argue that Defendant Di Stefano cannot be held liable under the NYSHRL because (a) she has no ownership in the Fund, (b) she lacks the ability to hire and fire employees, and (c) given that Plaintiff's accusations related to conduct taken by Defendant Di Stefano, she cannot be held liable as an "aider or abettor" because she is not facilitating the discriminatory acts of another individual. (*Id.* at 37.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes seven arguments. (Dkt. No. 67 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that she has sufficiently shown that she had a belief that she was reporting conduct that is outlawed by Title VII to survive a motion for summary judgment.  (*Id.* at 21.)  More specifically, Plaintiff argues that the evidence adduced sufficiently shows that Defendants made comments about her being a mother with young children and that she felt that she needed to choose between being a mother and working at the Fund, both of which establish a basis for believing Defendants' actions violated VII despite her reliance on the bullying policy.  (*Id.* at 22-23.)

Second, Plaintiff argues that Defendants had notice that she was reporting protected activity based both on her reports to Ms. Lais in the bullying complaint itself and on the knowledge of Defendants Di Stefano and Haelen from their participation in the relevant events. (*Id.* at 23-24.)

Third, Plaintiff argues that there is a genuine dispute of material fact remaining as to whether Defendants retaliated against her for her complaint.  (*Id.* at 24-31.)  More specifically, Plaintiff argues as follows: (a) the threat of a PIP and slights about her job performance constitute an adverse action because (i) PIPs were rarely issued, (ii) the poor performance noted

in the PIP is inconsistent with the previously positive reports Plaintiff had been receiving about her work, and (iii) having the PIP "hanging over her head" during the pendency of the investigation of her complaint negatively impacted Plaintiff's ability to act; (b) the increased supervision by Defendant Di Stefano (i.e., Defendant Di Stefano's request that she be copied on all of Plaintiff's correspondences with Fund staff) was a deviation from previous practice and constituted an adverse action; (c) the reduction of Plaintiff's responsibilities constituted an adverse action; (d) Defendant Di Stefano's exclusion of Plaintiff from meetings and actions in isolating Plaintiff from others in the Fund (for example, by telling her she could no longer use a conference room to do her litigation work) constituted adverse actions; and (e) Defendants' various reactions to her filing of a complaint (including Defendant Haelen telling her that it would be "painful" if she filed a complaint, the warning about the PIP, the fact that Defendants and Ms. Lais all met the day following Plaintiff's indication that she would file a complaint, and the failure to conduct the investigation into her complaint in a timely manner) also serve as evidence of retaliation.  (*Id.* at 24-28.)

Plaintiff also argues that she has sufficiently shown causation based on the timing of various conduct relative to the filing of her complaint, as well as based on direct evidence.  (*Id.* at 28-29.)  Plaintiff additionally argues that Defendants' proffered reason is pretextual based on (a) the long history of positive performance reviews of Plaintiff's work, (b) the fact that Defendant Di Stefano was involved in the conduct and "was obviously laboring in February and March 2016 to create a paper trail," and (c) the lack of evidence corroborating Defendants' version of events.  (*Id.* at 29-30.)  Further, Plaintiff argues that her termination of employment clearly constitutes an adverse action that occurred after she filed her complaint and after she filed an

EEOC complaint in December 2016.  (*Id.* at 30-31.)

Fourth, Plaintiff argues that, even if her Title VII claim is dismissed, the Court should exercise supplemental jurisdiction over her NYSHRL claims because they do not raise any novel issues of state law.  (*Id.* at 32.)

Fifth, Plaintiff argues that there is no basis to dismiss her retaliation claim based on the NYSHRL for the same reasons as argued related to her Title VII retaliation claim.  (*Id.* at 32-33.)

Sixth, Plaintiff argues that she has established a hostile work environment claim based on familial status under the NYSHRL.  (*Id.* at 33-35.)  More specifically, Plaintiff argues as follows: (a) she is not raising a failure to accommodate claim; (b) because other protected classes listed in the NYSHRL allow hostile work environment claims and the amendment does not include anything to suggest such claims would be excluded for a claim based on familial status, Defendants' argument on this point is unsupported; (c) Plaintiff has provided sufficient evidence to establish a hostile work environment on the basis of her familial status; and (d) there is no requirement for Plaintiff to show that other employees with a similar familial status were also treated in a hostile manner to establish her claim.  (*Id.*)

Seventh, Plaintiff argues that there is no basis for dismissing the NYSHRL claims against Defendant Di Stefano because Defendant Di Stefano was an "employer" based on the fact that she was a supervisor who actually participated in the conduct giving rise to the alleged discrimination, and thus she can be held liable under the NYSHRL as a principal actor.  (*Id.* at 36.)  In the alternative, Plaintiff argues, Defendant Haelen is undisputedly an "employer" for the purposes of the NYSHRL and was alleged to have participated in the discriminatory actions, and therefore Defendant Di Stefano can, at the very least, be held liable as an aider and abettor.  (*Id.*

27

at 36-37.)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make six arguments.  (Dkt. No. 72 [Defs.' Reply Mem. of Law].)  First, Defendants argue that Plaintiff did not engage in protected activity because she has failed to show that she held an objectively reasonable belief that the "bullying" conduct she was reporting was in violation of Title VII or the NYSHRL, and has failed to adduce any evidence to support her assertions that she believed she was targeted based on her gender.  (*Id.* at 4-6.)

Second, Defendants argue that they were not on notice that Plaintiff was reporting conduct proscribed by Title VII because Plaintiff's complaint and reports to Ms. Lais and Defendants Di Stefano and Haelen merely indicate that Plaintiff was expressing that she desired more time off to spend with her children, but did not reasonably indicate that Plaintiff was asserting that her requests were denied specifically because she was a woman or a parent.  (*Id.* at 6-7.)

Third, Defendants argue that the admissible evidence fails to show retaliation against Plaintiff.  (*Id.* at 8-13.)  More specifically, Defendants argue as follows: (a) the overwhelming evidence shows that, in context, the actions taken against Plaintiff were not related to her bullying complaint; (b) the request to copy Defendant Di Stefano on emails was based on conversations that occurred before Plaintiff made her complaint and on a meeting regarding which Defendant Di Stefano was "out of the loop"; (c) her eventual phase-out from the Board of Trustees began before her complaint and she continued to be involved for some time after her complaint; (d) Plaintiff has offered no evidence as to how her signatory authority changed and

28

admits that the signatory authority is updated only annually, and thus the timing of the alleged change in her signatory authority does not provide an inference of retaliation; (e) she has offered no evidence to establish that she was excluded from more meetings after her complaint and acknowledges that she did not attend every meeting even before her complaint; (f) the PIP was being prepared before Plaintiff made her complaint and thus it cannot constitute evidence of retaliation for that complaint, and withholding any negative feedback from Plaintiff during the pendency of the investigation does not constitute an adverse action, particularly because Plaintiff was already aware of most of the instances included in the PIP; (g) any delay by Ms. Lais in investigating Plaintiff's complaint cannot constitute an adverse action because it did not change the circumstances of Plaintiff's employment in any way; and (h) Plaintiff's termination in October 2018 was not an adverse action because it occurred more than two years after she made her complaint and only after she had been out on medical leave for two years with no expectation of returning.  (*Id.*)

Fourth, Defendants argue that the Court should decline to exercise supplemental jurisdiction if it dismisses her Title VII claim because family status was so recently added to the NYSHRL that claims based on that new protected class present a matter of first impression that should be decided by the state court.  (*Id.* at 14.)

Fifth, Defendants argue that Plaintiff was not subjected to a hostile work environment based on her familial status, but rather was lawfully denied accommodations to care for her children in the way she desired to, and that the mere fact that she made those requests for reasons that implicate her familial status does not transform Defendants' actions into a negative bias against employees who are parents.  (*Id.* at 14-16.)  Additionally, Defendants argue that

29

Plaintiff's own admissions that the workload of the legal department had increased during the relevant time shows that Defendants' reason that there was simply too much work to grant Plaintiff's request for a part-time schedule was not pretextual. (*Id.* at 15-16.)

Sixth, Defendants argue that Defendant Di Stefano cannot be held liable under the NYSHRL because (a) she did not have the power to make personnel decisions, and (b) Plaintiff has not shown that Defendant Haelen was a principle actor such that Defendant Di Stefano's actions could be considered to aid and abet his conduct. (*Id.* at 16.)

## II.   LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[23]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes

---

[23]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S.
317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must
come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.
P. 56(a), (c), (e).[24]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant
willfully fails to respond to a motion for summary judgment, a district court has no duty to
perform an independent review of the record to find proof of a factual dispute–even if that non-
movant is proceeding *pro se*.[25]  (This is because the Court extends special solicitude to the *pro se*
litigant by ensuring that he or she has received notice of the consequences of failing to properly
respond to the motion for summary judgment.)[26]  As has often been recognized by both the
Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural
rules.[27]

Of course, when a non-movant willfully fails to respond to a motion for summary
judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that
the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).
Rather, as indicated above, the Court must assure itself that, based on the undisputed material

---

[24]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a
response to the movant's Statement of Material Facts, which admits or denies each of the
movant's factual assertions in matching number paragraphs, and supports any denials with a
specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[25]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby,
J.) (citing cases).

[26]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[27]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten

the movant's burden.

    For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement[28]–even where the non-movant was proceeding *pro se*.[29]

    Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(b)(3).[30]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

_____

[28]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a
response to the movant's Statement of Material Facts, which admits or denies each of the
movant's factual assertions in matching numbered paragraphs, and supports any denials with a
specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[29]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[30]    *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession
by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested therein

. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether Plaintiff's Retaliation Claim Pursuant to Title VII Must Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendants' memoranda of law.  (Dkt. No. 59, Attach. 2, at 20-22, 23-27

[Defs.' Mem. of Law].); Dkt. No. 72, at 4-6, 8-13 [Defs.' Reply Mem. of Law].)  To those

reasons, the Court adds the following analysis.

Title VII makes it unlawful "for an employer to discriminate against any of his employees

or applicants for employment . . . to discriminate against any individual . . . because he has

opposed any practice made an unlawful employment practice by this subchapter, or because he

has made a charge, testified, assisted, or participated in any manner in any investigation,

proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima

facie case of retaliation under Title VII, a plaintiff must show the following four things: "(1) she

engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took

adverse employment action against her; and (4) a causal connection exists between the alleged

adverse action and the protected activity."  *Russell v. Aid to Developmentally Disabled, Inc.*, 753

F. App'x 9, 14 (2d Cir. 2018) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 [2d Cir.

2013]).  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."  *Summa*, 708 F.3d at 125.  "If the employer demonstrates such a reason, the burden shifts back to the plaintiff to adduce evidence from which a rational finder of fact could infer 'that the desire to retaliate was the but-for cause of the challenged employment action.'"  *Russell*, 753 F. App'x at 14 (quoting *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 [2d Cir. 2015]).

As to whether Plaintiff participated in protected activity,[31] Plaintiff has provided evidence that she raised her concerns about Defendant Di Stefano's treatment of her to Defendant Haelen on March 17, 2016, and it is undisputed that Plaintiff called Ms. Lais on March 18, 2016, to make a complaint about conduct that she had been subjected to in the workplace.  Defendants argue that this complaint does not constitute protected activity because Plaintiff made it under the auspices of Defendant Fund's "anti-bullying policy" rather than its anti-discrimination policy, and thus she could not have reasonably believed that she was reporting conduct that was

---

[31]      To the extent that Plaintiff argues that Defendants retaliated against her for making requests for time off and for schedule changes, such requests do not constitute a protected activity that can be the basis for a retaliation claim.  Protected activities under Title VII include opposition to a discriminatory employment practice or participation in an investigation, hearing, or proceeding under Title VII.  *Hubbard v. Total Communications, Inc.*, 347F. App'x 679, 680-81 (2d Cir. 2009) (citing 42 U.S.C. § 2000e-3[a]).  There is no evidence establishing that Plaintiff's requests for time off were in any way related to opposing a discriminatory practice.  Rather, the evidence shows that they were rooted in her desire to spend more time with her children and to return to the part-time schedule she had before she voluntarily went to a full-time schedule in 2011.  A request for a change of schedule or other accommodation for purely personal reasons like a desire to spend more time at home with children does not constitute protected activity.  *See Taylor v. Family Residences and Essential Enterprises, Inc.*, 03-CV-6122, 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008) (finding that refusing to accept a certain shift because it would interfere with the plaintiff's ability to get to his second job on time did not constitute protected activity).  As a result, any retaliatory actions in response to her requests for time off are not actionable under Title VII.

unlawful under Title VII; they also argue that Plaintiff has not adduced evidence to support that she had an objectively reasonable belief that Defendants' alleged conduct towards her was based on a class protected by Title VII (in this case, her sex). *See Summa*, 708 F.3d at 126 ("To establish that she engaged in protected activity, Summa need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute."); *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 240 (N.D.N.Y. 2010) (Hurd, J.) (noting that, in order to meet the protected activity prong, the plaintiff need only show that she had a "good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII"). Whether a belief is reasonable is an objective standard that is "to be evaluated from the perspective of a reasonable similarly situated person." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 16-17 (2d Cir. 2013).

The Court is not convinced that the fact that Plaintiff explicitly referenced the anti-bullying policy when making her complaint to Ms. Lais is *by itself* sufficient to merit a finding that she did not have a good faith, reasonable belief that the conduct that she was reporting was a violation of Title VII. A plaintiff is not required to cite to Title VII (or any specific statute) in order to make a complaint that constitutes protected activity. Title VII also applies to harassment and thus Title VII can apply to conduct that would be covered by the anti-bullying policy. The Court will therefore focus on the substance of what Plaintiff reported as part of that complaint rather than any bare statement of what policy it might fall under.

In her deposition, Plaintiff testified that, at the time she was speaking with Ms. Lais regarding her complaint, she "felt that [she] was being now asked to make a choice between

being a mother spending time with her child and having a job at the Fund."  (Dkt. No. 59, Attach. 4, at 151 [Pl.'s Dep.].)  She also testified that she felt that Defendant Di Stefano had become hostile towards her after she made her request to spend time with her daughter (i.e., to move to the equivalent of an 80% work schedule).  (*Id.* at 152.)  The notes that Plaintiff submitted to Ms. Lais as part of her complaint reflect instances in which her status as a parent was the subject of work tensions, but do not contain any indication from which a reasonable factfinder could conclude that Plaintiff believed that this treatment was based specifically on her sex.  (Dkt. No. 59, Attach. 31.)  In her affidavit submitted in opposition to Defendants' motion, Plaintiff raises many of the same parental-related concerns, specifically stating that, by February 2016, "Di Stefano had become increasingly hostile and belittling towards me," and "[i]t was evident to me that she was using my desire to spend time with my daughters as the rationale for this hostile behavior."  (Dkt. No. 64, at ¶ 63 [Pl.'s Aff.].)  Notably, of all the specific statements that Plaintiff asserts Defendants Di Stefano and Haelen made to her about work-life balance and being parents (e.g., that working long hours impacted their personal lives and required sacrifice, that they made choices about their careers in order to spend more time with their children, that Plaintiff had longstanding problems with work-parenting balance, and "wouldn't it be nice if we could go home and eat dinner with our families"), none of them directly implicate anything about Plaintiff's sex.  (Dkt. No. 64, at ¶¶ 56, 76, 82 [Pl.'s Aff.].)  In her deposition, Plaintiff testified that she did not know whether Defendant Di Stafano's conduct would have been different if she had been a father asking to spend more time with his children, but that she thought that Defendant Di Stefano "probably" would have treated a father in the same situation the same way that she treated Plaintiff, stating specifically that she thought "this [would] have happened if a

parent-child issue was in front of [Di Stefano], whether it was a mom or dad."  (Dkt. No. 59, Attach. 4, at 39-40, 202 [Pl.'s Dep.] [attaching errata sheet changing "wouldn't" to "would" in the above quote].)  When asked whether she had any evidence to support a belief that a father would have been treated differently, she further stated, "No, I am talking about being a parent, whether it is a mom or dad, this is parent-child."  (*Id.* at 40.)

It is well established that parental status is not a protected characteristic for the purposes of Title VII.  *Rotondo v. Best Buy Stores LLC*, 17-CV-0522, 2019 WL 4805374, at *8 n.8 (N.D.N.Y. Oct. 1, 2019) (Hurd, J.).  As noted above, the evidence (including Plaintiff's own notes about the situation) indicates that she was reporting discrimination and/or harassment based on her status as a "mother."  However, even if Plaintiff believed that she was being discriminated against or harassed because she is a mother, she has not adduced any admissible evidence from which a reasonable factfinder could conclude either that (a) she believed that the treatment was based specifically on her status as a mother (as opposed to a father) and thus on her status as a woman, or (b) any belief that she was targeted as a mother/woman specifically was an objectively reasonable belief.[32]

_____

[32]      On June 18, 2020, Plaintiff filed a letter, citing to the Supreme Court's recent decision in *Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731 (June 15, 2020), as supplemental authority supporting her argument that she has sufficiently shown that Defendants' conduct was based on her sex.  However, *Bostock* is inapposite.  In particular, the Court has no doubt that an individual's reporting that she is being discriminated against because she is a mother can, under the right circumstances, be sufficient to show a reasonable belief that she is being discriminated against based on her sex.  However, those are not the circumstances here.  As discussed above, Plaintiff has not provided any evidence that Defendants' treatment of her was related to her sex in any way, but rather her gender-neutral status as a parent.  Notably, unlike being gay or transgender (which, as the Supreme Court found, cannot be defined or considered without reference to sex), being a parent does not have inherent gender implications.  Although Plaintiff reported that she felt like she was being forced to choose between being a mother and her job, her specific use of the term "mother" does not automatically mean that she believed her sex was

Plaintiff argues that she has sufficiently shown that she reasonably believed that her conduct was covered by a "gender-plus" theory (with the "plus" being her parental status), whether or not she can sustain a claim on that basis.  (Dkt. No. 67, at 21-22 [Pl.'s Opp'n Mem. of Law].)  However, Plaintiff's argument ignores the fact that, even in a "gender-plus" case, she must still show that her gender played some role.  As already discussed, although Plaintiff frames it as her feeling that she was required to choose between being a mother and her job, there is no admissible evidence to establish that she believed that it was the fact that she was a *mother specifically* (and thus a woman) as opposed to that she was a parent that caused Defendants to act in the ways that they did.  *See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) ("The relevant issue is not whether a claim is characterized as 'sex plus' or 'gender plus,' but rather, whether the plaintiff provides evidence of *purposefully sex-discriminatory* acts.") (emphasis added).  In particular, none of the evidence (including the statements by Defendants Di Stefano and Haelen) reasonably indicate that their treatment of Plaintiff was based on the fact that Plaintiff was a woman or on any kind of stereotype about working mothers, or that they would have treated a male father in a different manner.  The fact that Plaintiff subjectively felt that the long hours she was being asked to work were interfering with her ability to spend more time with her children (and thus to be a parent) does not turn

---

implicated in Defendants' conduct because Plaintiff herself testified that it was her status of being a parent that was at issue and she thought that Defendant Di Stefano would probably have treated a father the same way under the same circumstances.  (Dkt. No. 59, Attach. 4, at 39-40 [Pl.'s Dep.].)  Thus, unlike in a situation involving an individual's status as a gay or transgender person, Plaintiff's own evidence indicates that the conduct here was, even in Plaintiff's subjective mind, truly gender-neutral.  There is simply no evidence to support Plaintiff's argument that she reasonably believed that she was reporting discrimination based on her sex merely because she referred to herself as a mother.

Defendants' treatment of her into gender-based discrimination, nor does it show that she reasonably believed that Defendants' conduct was motivated by the fact that she is a woman specifically.  The Court therefore rejects Plaintiff's argument that she has sufficiently shown that she reasonably believed she was reporting "gender-plus" discrimination or harassment.[33]

In the alternative, the Court finds that, even if it were to find that Plaintiff's complaint constituted protected activity, no reasonable fact finder could conclude, based on the admissible evidence, that any adverse action she suffered was causally connected to her complaint.  As an initial matter, the Court notes that it is axiomatic that an action taken against an individual before he or she engaged in protected activity cannot constitute an adverse action for the purposes of a retaliation claim.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding that an inference of retaliation could not arise where the plaintiff's termination was the end result of "an extensive period of progressive discipline" that began five months before he engaged in protected activity); *Doroz v. Columbia Place Assocs., LLC*, 13-CV-1135, 2014 WL 5475289, at *7 (N.D.N.Y. Oct. 29, 2014) (Hurd, J.) (finding that the plaintiff's termination a year before his protected activity could not show retaliation); *Grant v. New York State Office for People with Developmental Disabilities*, 12-CV-4729, 2013 WL 3973168, at *9 (E.D.N.Y. July 30, 2013) (finding that the plaintiff could not establish a causal connection between any protected activity and the adverse action where all of the alleged adverse actions occurred before the

---

[33]     The cases Plaintiff cites in support of her gender-plus theory are inapposite, because there is no admissible evidence to show that Plaintiff was subjected to any of the stereotypes about the incompatibility of motherhood and full-time work that were found to constitute gender-plus discrimination in those cases.  *Back*, 365 F.3d at 118-21.  Rather, in this case, Defendants wanted Plaintiff to work a full-time schedule, and it was Plaintiff who was consistently seeking to work less due to her parental obligations.

plaintiff ever engaged in the protected activity).  As a result, Plaintiff cannot rely on any actions

that were taken against her before her March 17, 2016, meeting with Defendant Haelen, which,

as discussed above, was the first apparent instance when Plaintiff reported feeling like Defendant

Di Stefano was forcing her to "choose between being employed at the Fund and being a mother."

(Dkt. No. 64, at ¶ 81 [Pl.'s Decl.].)

    As Defendants argue, many of the specific types of conduct that Plaintiff asserts as

adverse actions began before she made her complaint.  Specifically, it is undisputed that (a) the

resolution to name Defendant Di Stafano as Secretary of the Fund's Board of Trustees was made

before Plaintiff made her complaint, even if she was not appointed until after;[34] (b) Defendant Di

Stefano and Ms. Lais began preparing the PIP before Plaintiff made her complaint; (c) Defendant

Di Stefano expressed dissatisfaction with Plaintiff's work completion and work product before

she made her complaint; (d) Defendants Haelen and Di Stafano engaged in delays in responding

to and approving her requests for time off, including her request for a return to an 80% schedule

or a schedule with time off on various Tuesdays and Thursdays before she made her complaint;

(e) Defendant Di Stefano cancelled meetings with Plaintiff frequently both before and after she

made her complaint; (f) Defendant Di Stefano worked with members of the other Departments

without consulting Plaintiff both before and after she made her complaint, including an instance

in or before February 2016 when Plaintiff asserts Defendant Di Stefano unilaterally drafted

language for a contract that "undermined" Plaintiff's relationship with that Department; and (g)

---

[34]     Notably, in her deposition, Plaintiff testified that, although Defendant Di Stefano
became Secretary officially in April 2016, Defendant Haelen had told Plaintiff "that he didn't
expect [Plaintiff] to continue in that role as [S]ecretary" as early as the summer of 2015.  (Dkt.
No. 59, Attach. 4, at 22-23 [Pl.'s Dep.].)

Defendant Di Stefano sent an email indicating that requests for time off needed to copy all Counsel's Office staff before Plaintiff made her complaint.  (*See, supra*, Part II of this Decision and Order, at ¶124; Dkt. No. 59, Attach. 6, at 5-6, 10-12; Dkt. No. 64, at ¶¶ 38-39, 41-42, 45-55, 59, 61, 65, 68, 72.)  Because all of this conduct was occurring before her complaint, the fact that some of it merely continued to occur after she made her complaint does not reasonably suggest that Defendants retaliated against her.

The Court also agrees with Defendants that it is logically inconsistent for Plaintiff to argue that Defendants retaliated against her by taking work away from her and diminishing her responsibilities and also argue that Defendant Di Stefano had acted in an inappropriate manner by "loading up her workload" with more work than she could handle around the beginning of March.  (Dkt. No. 64, at ¶¶ 70.)  Specifically, there is no evidence to suggest that her responsibilities were diminished so much that a reasonable factfinder could conclude that the lessening of her work load rose to the level of an adverse action.

The remaining asserted retaliatory actions include the following: (a) an email on March 21, 2016, in which Defendant Di Stefano requested that Plaintiff copy her on or forward to her emails between Plaintiff and staff on work matters or work questions so that she was aware of what was going on and they would not be working at "cross-purposes"; (b) the fact that Defendant Di Stefano took over various responsibilities that used to be Plaintiff's without telling her, including cancelling or not inviting her to meetings or not including her on emails, independently drafting contract language behind Plaintiff's back or changing Plaintiff's work product without telling her, and taking over various litigation matters; (c) the fact that Defendant Di Stefano excluded her from any involvement with the Board of Trustees, even though the

41

previous Fund Counsel had her assist him with Board matters when he was the Secretary; (d) the fact that she was excluded from a Counsel's Office Staff meeting around June 10, 2016; (e) the fact that she was told she could not work in the Counsel's Office conference room and was told to instead do that work in the file room; (f) the fact that, on June 8, 2016, she was notified that her signatory authority had been reduced to vendor responsibility forms[35]; and (g) the fact that Defendants disputed her right for a waiver related to her health benefits in September 2017 and terminated her employment in October 2018.  (Dkt. No. 64, at ¶¶ 109-10, 112-24, 126-32, 140, 142, 144, 163-64.)

The Court is not convinced that a reasonable factfinder could conclude, based on the admissible evidence, that these alleged actions rose to the level of adverse actions.[36]  Rather, they are more in line with "petty slights or minor annoyances" than materially adverse actions, whether or not Plaintiff subjectively felt humiliated and excluded.  *See Ziyan Shi v. New York Dep't of State, Division of Licensing Servs.*, 393 F. Supp. 3d 329, 337-39 (S.D.N.Y. 2019) (finding that assigning the plaintiff a challenging workload, giving the plaintiff a counseling

---

[35]    Plaintiff admitted in her deposition that, although she did not receive notice in the change of signatory authority until June 2016, she does not know when that authority was actually changed.  (Dkt. No. 59, Attach. 4, at 124-25 [Pl.'s Dep.].)

[36]    The exception to this finding is Defendants' alleged actions related to Plaintiff's health benefits and her termination, both of which would arguably dissuade a reasonable worker from making a charge against her employer.  However, these actions occurred more than a year after she made her complaint and there were numerous intervening circumstances (most notably, Plaintiff's being on leave for a significant portion of time without any indication of when she would return to work) that would break any causal connection between her complaint and these actions.  *See Placide-Eugene v. Visiting Nurse Service of New York*, 86 F. Supp. 3d 132, 150 (E.D.N.Y. 2015) (noting that an "intervening event dispels an inference of a causal relationship between the protected activity and Plaintiff's termination, thus defeating Plaintiff's prima facie case of unlawful retaliation").

memorandum without adverse consequences, yelling and screaming at the plaintiff, and failing to include the plaintiff on an email to all the other investigators did not rise to the level of an adverse employment action); *Lyman v. New York State OASAS*, 928 F. Supp. 2d 509, 523 (N.D.N.Y. 2013) (D'Agostino, J.) (finding that actions including requiring the plaintiff to call into the office and inform them of his whereabouts when he was working outside the office, communicating with the plaintiff's estranged ex-wife, harassing the plaintiff at work, reassigning certain assignments from the plaintiff without decreasing his pay or position, informing plaintiff that he was being laid off for budgetary reasons, and placing a memorandum in the plaintiff's file did not constitute adverse actions to show retaliation).

Additionally, even if these actions did constitute adverse actions when considered together, Plaintiff cannot show that those actions are causally connected to her complaint of March 18, 2016. Although the above actions are somewhat different conduct than what Plaintiff dealt with before she made her complaint, they represent a variation on the same theme: there is nothing in the admissible evidence to show that Defendant Di Stefano or Defendant Haelen treated Plaintiff worse than they had before she made her complaint. Without any such worsening, Plaintiff cannot show that Defendants' post-complaint actions were retaliation for her complaint, as opposed to a mere continuation of Defendants' previous pattern of conduct towards her. *See Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007) (noting that, "where, as here, timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff ever engaged in any protected activity, an inference of retaliation does not arise," and finding that, because the facts "document a pattern of attempts to undermine and exclude him that began well before the filing of the first EEOC complaint and that continued

after the complaint was filed," no causal connection was shown between those acts and the protected activity); *Hardy v. Rochester Genesee Regional Transp. Auth.*, 906 F. Supp. 2d 178, 185 (W.D.N.Y. 2012) (noting that "temporal proximity alone does not create an inference of retaliation when the adverse action is part of, or the culmination of, a disciplinary process that was already underway prior to the protected activity").

For all of the above reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's Title VII retaliation claim. The Court also finds that Plaintiff's claim for retaliation under the NYSHRL must be dismissed because the standards for liability under Title VII and NYSHRL are the same. Specifically, even if Plaintiff's complaint about discrimination or a hostile work environment based on her parental status would constitute protected activity under NYSHRL (because parental status is a protected classification under that statute and thus she had a good faith reasonable belief that she was reporting conduct that violated the statute), the same deficiencies in her ability to prove an adverse action or a causal connection between any adverse action and her protected activity apply to her NYSHRL claim. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. Mar. 10, 2014) (finding it appropriate to exercise supplemental jurisdiction over NYSHRL claim despite having dismissed the Title VII claims because "the standards of liability under the two statutes are coterminous," and thus it was in the interests of judicial economy, convenience, fairness, and comity to dismiss those claims together).

   **B.   Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's Remaining NYSHRL Claim**

After careful consideration, the Court answers this question in the negative for the

44

reasons stated in Defendants' memoranda of law.  (Dkt. No. 59, Attach. 2, at 27 [Defs.' Mem. of Law]; Dkt. No. 72, at 11-12 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

A district court "may decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In deciding whether to exercise supplemental jurisdiction, the court should balance "values of judicial economy, convenience, fairness, and comity."  *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  However, as a general rule, "when the federal claims are dismissed, the state claims should be dismissed as well," and the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998).

The Court notes that Plaintiff's NYSHRL claim for discrimination and/or hostile work environment based on her familial status remains to be decided.  As discussed above in Part I of this Decision and Order, Plaintiff's discrimination/hostile work environment claim under Title VII was dismissed on a previous motion due to her failure to state a claim, in particular based on her failure to allege facts plausibly suggesting that she was discriminated against based on her sex.  However, because Title VII does not include familial status as a protected class, the Court has not had the opportunity to reach the merits of Plaintiff's claim for discrimination based on her familial status.  Additionally, because familial status is protected under New York law only (and not also federal law), any decision on that claim would involve a deeper assessment of New York state law, even if the general analytical framework is the same as that used under federal law.

Because the Court has already dismissed the remaining federal law claim in this action and was not required to make a determination on the merits of any Title VII discrimination and/or hostile work environment claim on this motion for summary judgment, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL claim for familial status discrimination.  In particular, the Court finds that this is the typical case in which the relevant factors point towards that conclusion, as any decision will require an assessment of primarily state law given that Title VII has no equivalent protection based on familial status.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**; and it is further

      **ORDERED** that Plaintiff's retaliation claims under Title VII and the NYSHRL are **DISMISSED with prejudice**; and it is further

      **ORDERED** that Plaintiff's discrimination claim based on familial status under the NYSHRL is **DISMISSED without prejudice** to refiling in state court within the applicable time limits; and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 11, 2020
     Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge